O'Brien v. Ash.

169    283
e178  ³170

## O'BRIEN v. ASH et al., Appellants.

### Division One, June 18, 1902.

1. **Trusts:** WIFE'S SEPARATE ESTATE: DEATH OF HUSBAND. Where an estate has been conveyed to a trustee for the use and benefit of a married woman, free and separate from the use and marital rights of her then husband, and that husband dies, the trust at once becomes executed in the widow. And if she marries again the trust is not revived, but the husband will take his so-called common-law rights in the property and in addition thereto such other property rights as may be given him by statute.

2. ———: ———: MEANING OF DEED: EXTRINSIC EVIDENCE. Where the language of a deed to a trustee clearly and unmistakably protects the beneficiary only against her then husband, it can not by extrinsic evidence be enlarged to exclude any future husband she may have; and in such case questions as to "what the grantor said at the time the deed was made," are improper. Unless the intent to exclude such future husband appear by the deed itself, his marital rights will be allowed.

3. ———: ———: HUSBAND'S HALF UNDER STATUTE OF 1895. Where property has been conveyed to a trustee for the sole use and benefit of grantor's wife, "free and separate from the use and benefit of her said husband," and he dies, the trust thereby becomes executed and she the owner; and if she marries again, and dies without leaving children by either husband, the husband surviving her, under the statute of 1895 (sec. 2938, R. S. 1899), is entitled to one-half the real and personal estate belonging to her at the time of her death absolutely, subject to the payment of the wife's debts. This should be the holding although the trust deed may

NOTE.—Decided December 17, 1901. Motion for rehearing denied June 18, 1902.

have given the trustee power to dispose of the property to such persons as she may by last will designate, and although she may by last will have attempted to devise and bequeath it to some person other than her surviving husband.

4. ——: ——: RETROSPECTIVE STATUTE. The trust having become executed, it matters not that the trust deed creating the separate estate was made before the passage of the statute giving the widower of the childless wife one-half her estate.

5. ——: ——: ——: DIFFERENCE BETWEEN VESTED RIGHT AND POWER OF DISPOSAL. There is a difference between the right to own and hold property and the right to dispose of it by will. The one is the natural right of the citizen, which, when acquired under existing laws, becomes a vested right, not subject to be defeated by subsequent legislation; the other is a creation of legislative enactment and subject at all times to legislative regulation and change. And in this case the interest of testate's husband and that of the devisees of her will was simply an expectancy, and not a vested right, until her death, and then it was made such in him by the change in the statute.

6. Statute: TITLE: CLEARNESS. The title to an act is sufficiently "clearly expressed" if it does not mislead as to the chief topic of that act, and if minor features thereof have a reasonable and natural connection with the subject named. And this being the rule it is held that the title to a statute which refers to the share of the wife's property with which her widower shall be endowed at her death as "dower," is not misleading, but meets the constitutional requirement.

7. Partition: POSSESSION: CO-TENANT. Although a devisee under a will may claim he is entitled to the whole of the estate, and under that belief enter into possession of the whole, yet if in fact he is entitled to only an undivided half, he does not have such exclusive possession as prevents his co-tenant of the other half from bringing partition.

8. ——: POSSESSION BY EXECUTRIX. An order of the probate court to an executor to take possession of the real estate and rent the same, gives him only a temporary possession for the purpose of collecting the rents during the period of administration, and does not prohibit the bringing of partition.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer*, Judge.

AFFIRMED.

*John M. Dickson* and *John D. Johnson* for appellants.

(1)  If the amendment in question is valid, it either relates to and is alternative to curtesy or creates a new right independent of curtesy as an existing right.  If the first, then O'Brien can not maintain this suit, because he had no curtesy in his wife's estate.  If the second, he has no interest in the land, because it was devised to the appellant Ash by the will of his wife, to devise which she had an absolute right. Sec. 4603, R. S. 1899; sec. 869, R. S. 1889. (2) Section 4518a, Revised Statutes 1889 (now sec. 2938, R. S. 1899), is violative of section 25, article 4, of the Constitution of Missouri, which provides that, "No bill shall contain more than one subject, which must be plainly expressed in its title."  The subject of the amendment is not embraced in the title "Dower," nor has it any relation or is it germane to or connected with such title.  Bouvier's Law Dict., p. 505; Coke Litt. 30a; Blackstone, Comm., 130; 4 Kent 35; Washburn, Real Prop. 146; Rapalje's Dict. 417; Black's Dict. tit. Dower; Century Dict., part 6, p. 1749; Scribner, Dower, p. 3; Chap. 21 entitled "Dower," excluding sec. 2938, formerly 4518a; Payne v. Payne, 119 Mo. loc. cit. 179; Hamilton v. O'Neil, 9 Mo. 11; VonArb v. Thomas, 63 S. W. 96; 1 Kent, Comm. (old Ed.), p. 501; Cooley's Const. Lim., pp. 170, 171, 172 and 178; Sutherland on Statutory Const., secs. 95, 98 and 102; Mewherter v. Price, 11 Ind. 201; Grover v. Ocean Grove, etc., 45 N. J. L. 399; City of Kansas v. Paine, 71 Mo. 159; State ex rel. v. Lafayette Co. Ct., 41 Mo. 39; State ex rel. v. Co. Ct. of Jackson Co., 102 Mo. 537; Witzman v. Railroad, 131 Mo. 612; State ex rel. v. Leffingwell, 54 Mo. 458; sec. 6507, R. S. 1889; sec. 4160, R. S. 1899.

*E. T. Farish* and *C. J. Macauley* for respondent.

(1)   Where a trustee is appointed to hold the separate estate of a married woman, and the marriage relation comes to an end, the estate of the trustee at once becomes executed in the person who is to take it, the wife, if living, or her heirs at law if she be dead.   Roberts v. Mosely, 51 Mo. 282; Mergargee v. Naglee, 64 Pa. St. 216; William's App., 83 Pa. St. 377; Cushing v. Blake, 30 N. J. Eq. 689; Pitts v. Sheriff, 108 Mo. 110; Morgan v. Moore, 3 Gray 323; 2 Washburn on Real Property (3 Ed.), p. 461, sec. 45, and (5 Ed.), p. 540; Steacy v. Rice, 27 Pa. St. 75. (2)   As between the contestants here, the intention of the grantor, Charles Byrnes, and the grantee and beneficiary under the deed of January 17, 1890, must be gathered from the deed itself, and, in order to exclude the marital rights of respondent, it must clearly appear from said instrument, creating the equitable separate estate, that it was the intention to exclude him, i. e., Christopher O'Brien.   And as the only clause in said deed, rendering the estate separate, refers to Charles Byrnes, the then husband of the *cestui que trust,* the separate estate thus created would exist against no other.    Moore v. Morise, 4 Drew. 37; Benson v. Benson, 6 Simon 126; Knight v. Knight, 6 Simon 121; Stewart on Husband and Wife, secs. 199 and 201.   If the property is settled to the separate use of a married woman, and the separate use is intended to be confined to a particular marriage, and the husband dies and the widow marries again, the second husband will take his common-law right in the property.   2 Perry on Trusts (4 Ed.), p. 250, sec. 6538, cases cited in note 4.   If the trust is for the benefit of a married woman, or one in contemplation of marriage, it falls when she becomes discovert, and it is not revived by subsequent marriage.   Bush's App., 33 Pa. St. 85; Dodson v. Ball, 60 Pa. St. 492; Carson v. Fuhs, 131 Pa. St. 256;

Schouler on Husband and Wife, sec. 234, p. 278; Perry on Trusts, p. 250, sec. 653; Miller v. Bingham, 1 Ired. Eq. (N. C.) 423; Bank v. Taylor, 53 Mo. 449; Stewart on Husband and Wife, sec. 199. In the case of Richardson v. DeGiverville, 107 Mo. 432, Judge BLACK says: "The purpose to create a separate estate must clearly appear beyond a reasonable doubt, otherwise the husband will retain his ordinary legal and marital rights over the property." 2 Story Eq., sec. 1381; Cushing v. Blake, 30 N. J. Eq. 689.

ROBINSON, J.—This is a proceeding in equity for partition of certain real estate in the city of St. Louis, claimed by defendants under the will of plaintiff's deceased wife.

The petition alleges that the plaintiff was married to Mary Byrnes on April 22, 1896; that she died on January 9, 1898, testate, but without any child or other descendants in being capable of inheriting; that at the time of plaintiff's marriage with his wife, she was the widow of Charles Byrnes deceased, and that no issue was born of said marriage with said Charles Byrnes or the subsequent marriage with plaintiff; that by the will of plaintiff's wife dated December 15, 1897, and duly probated on January 12, 1900, she undertook to devise all the real estate in controversy to defendants as tenants in common; that as widower of his deceased wife he is entitled to one-half of said property, absolutely, subject only to the payment of her debts, and that defendants as devisees under the will only acquired the other half thereof.

It is further alleged that the property in controversy on January 17, 1890, was conveyed to the defendant Maggie Huette, in trust, however, for the sole and separate use of plaintiff's deceased wife, then the wife of said Charles Byrnes.

After particularly describing the property and setting

forth the names, rights, interests and title of all parties interested therein, the petition concluded with a prayer "that the interest of the parties hereto may be adjudged and determined and partition made and decreed according to their respective interests, and that as it is manifest from the nature and character of the land and the interests of the parties, that partition in kind can not be made without great prejudice to the owners, the land be ordered sold and that the proceeds be divided among the parties according to their respective interests," etc.

The amended answer, after admitting that plaintiff was married to Mary Byrnes on April 22, 1896; that she died on January 9, 1898, testate; that her will was dated December 15, 1897, and duly admitted to probate on January 12, 1898; that at the time of the marriage of plaintiff and Mary Byrnes, the latter was the widow of Charles Byrnes, and that no issue was born of the marriage or of the subsequent marriage with plaintiff, proceeds as follows:

"And for further answer and by way of new matter, defendants say: That at the time of the marriage of plaintiff O'Brien to Mary A. Byrnes, the latter was the widow of Charles Byrnes, and that no issue born of the marriage of said testate, Charles Byrnes, survived the said Byrnes; and that no issue was born of the subsequent marriage of said testate to the plaintiff O'Brien. That the said Charles Byrnes died on or about January 17, 1890. That on or about January 17, 1890, the said Byrnes in immediate anticipation of death, and with the view and purpose of assuring to his wife the property described herein in plaintiff's petition, free from the control or interference of any future husband, or from the right of curtesy or any other right whatsoever which might otherwise accrue to any future husband, and to assure to her the complete usufruct of said property during her life, and the absolute power to dispose of it as she pleased during her life, and at her death, did on the date aforesaid, convey the

premises described in plaintiff's petition to one Maggie Huette, in trust, however, to and for the sole and separate use benefit and behoof of the deceased, Mary A. O'Brien (then Byrnes), covenanting and agreeing with her that she could without let or molestation, have, hold, use, occupy and enjoy the aforesaid premises with all the rents, issues, profits, and proceeds arising therefrom, whether from sale or lease, for her own sole use and benefit, separate and apart from her husband, and wholly free from his control and interference, debts and liabilities, curtesy and all other interests whatsoever; and the trustee was required at all times at the request of the testate, expressed in writing, signed by her or by her authority, to bargain, sell, mortgage, convey, lease, rent, convey by deed of trust for any purpose or otherwise dispose of said premises, or any part thereof, to do which full power was given by said deed; and said trustee was required to pay over the rents, issues, profits and proceeds thereof to her, the said Mary A. Byrnes, afterwards O'Brien; and at her death the said trustee was required to convey or dispose of the said premises, or such part thereof as might then be held by her, and all profits and proceeds thereof, in such manner, to such person or persons, and at such time or times as she should by her last will and testament or any other writing signed by her, or by her authority, direct and appoint; and in default of such appointment the said trustee was by said deed required to convey said premises to the lawful heirs of said deceased, Mary A. Byrnes, afterwards O'Brien.

"Defendants say that by virtue of the rights and powers conferred upon her by said deed, the testatrix by her last will and testament aforesaid, appointed by the devise in her last will, the defendants as the persons to whom said trustee should convey the legal title to said lands at her death and that they are now entitled to receive from said trustee a deed to the legal title to said premises, so held by said trustee for

the purposes of said trust; and defendants say that said trustee does in fact now stand seized to the use of these defendants since the death of said Mary A. O'Brien.

"Defendants say that by virtue of said deed the title to the property described in plaintiff's petition vested at once in said trustee for the exclusive use and benefit, as aforesaid, of the testratrix, free from any right of curtesy, or any other right whatsoever of any husband whatsoever and said title could not be affected by any statute afterwards passed by the Legislature of this State in derogation of the title thus created. And these defendants say that if it be true, as plaintiff avers, that upon the death of Charles Byrnes the legal and equitable estate were merged and the fee simple title became thereby fixed in the widow of said Byrnes, so that it could not revive upon any subsequent marriage—these defendants say, that such title vesting as claimed by said plaintiff was not and could not be affected by any statute afterwards passed by the Legislature of this State in derogation of the title thus created. That Christopher O'Brien, the plaintiff, has not now and never at any time had any interest of any kind or character in said premises, in virtue of his marriage to the said Mary A. Byrnes, nor by gift, grant, devise or by operation of any law of this State.

"And defendants further state, that the plaintiff claims title to an undivided one-half of said premises as tenant in common with defendants, under and by virtue of the act of the Legislature of the State of Missouri, entitled, "An Act to amend chapter 55 of the Revised Statutes of the State of Missouri of 1889, entitled 'Dower,' by adding a new section thereto to be known as section 4518a," approved March 2, 1895; and defendants aver that said act, in so far as it seeks to affect any estate of whatever kind vested in any married woman at the time of or prior to the passage of the same is null, void and of no effect, because in direct contravention of the Constitution of Missouri—section 15, ar-

ticle 2 thereof; and in so far as it seeks to affect previously vested estates, it contravenes section 30, article 2 of the Constitution of Missouri, and the fourteenth amendment of the Constitution of the United States, depriving defendants' testatrix, under whom these defendants claim title, of her said property without due process of law; also said act is null, void and of no effect, because it contravenes section 28 of article 4 of the Constitution of Missouri, in that the subject of said act was not clearly expressed in its title.

"Defendants further state that said plaintiff is not a tenant in common in the lands described in plaintiff's petition; and these defendants aver that said O'Brien is also a devisee under said will in respect to other land than that described in plaintiff's petition; and these defendants say that the said interest devised by said will vested in him the said plaintiff, immediately upon the probate of said will as aforesaid in the probate court, which will is still in force and effect.

"Defendants aver that plaintiff has never renounced the rights accruing to him under said will, nor has he elected or claimed the right to elect under any of the provisions of the statute relating to 'Dower.'

"Defendants further state that plaintiff is not now and never has been in possession of said premises, nor has he ever claimed the right to the possession of the same.

"Defendants aver that immediately upon the probate of the will of Mary A. O'Brien, claiming as devisees under the terms of said will they entered, as the sole devisees thereof, into the open, notorious, exclusive and adverse possession thereof, holding and claiming to hold the same under and by virtue of the devise so made to them by said will; and defendants aver, that they remained in possession of said premises until, to-wit, March 7, 1898, when by an order duly entered in the probate court of the said city of St. Louis, the executrices under said will were directed to take into their

possession and control all the real estate devised under said will, for the purpose of leasing and renting the same and applying the same to the payment of the debts of the estate; and these defendants say that in deference to said order of said court, they did at once surrender the possession of the said premises described in plaintiff's petition to the said executrices, and they say that the said executrices are still in possession of the same under said order of the probate court; and they say that the said probate court has now exclusive jurisdiction over the said premises.

"Defendants say that the jurisdiction of this court over the subject-matter of this suit has never attached or has been defeated by the order aforesaid placing said executrices in charge thereof, and defendants plead to the jurisdiction of this court herein.

"And having fully answered, defendants pray to be hence discharged with their costs."

The court on plaintiff's motion struck out all that portion of the answer setting up new matter above quoted, and defendant excepted.

There was no controversy over the facts, and the trial resulted in a decree as prayed, and the land was ordered to be sold and the proceeds divided among the parties, according to their respective interests as set forth in the petition. After an ineffectual motion for a new trial and in arrest of judgment, defendant brings the case here by appeal.

Maggie Huette, the grantee named in the deed of January 17, 1890, was called by defendants as a witness, and after testifying that she knew the grantor in the deed, Charles Byrnes; that he died on January 19th, and that she saw him on January 17th, 1890, the day the deed was executed, was then asked by counsel for the defendants "what Charles Byrnes said at the time the deed was executed?" This was objected to by counsel for the plaintiff, and the objection sustained by the court, and defendants saved their

exceptions thereto.    The court's action in that regard is made one of the assignments of error on this appeal.    It may be well to note here in passing, that the question asked was for the sole purpose of showing Byrnes's intention in making the deed, and not with the view of showing his want of mental capacity to properly execute it.

The points made by counsel for appellants are that by the deed of January 17, 1890, the grantor intended the deed to operate to the separate use of the wife, excluding all marital rights of any future husband; that the court erred in excluding evidences of what the grantor said at the time the deed was executed; that as the title was vested in Mary Byrnes (afterwards the wife of plaintiff) by the deed of January 17, 1890, and the character of the deed was such that the separate use created thereby extended to any future husband, the Act of 1895, could not affect her rights thereunder; that as the estate of plaintiff's wife was in process of administration, and the probate court had ordered the executrix to take charge of the real estate for the purpose of leasing same, this proceeding was premature and could not be maintained; that the Act of 1895 in question, is violative of section 28 of article 4 of the Constitution of the State, requiring that no bill shall contain more than one subject, which shall be expressed clearly in its title.

Under the deed of January 17, 1890, made by Charles Byrnes as party of the first part, to Maggie Huette as party of the second part, for Mary Byrnes, party of the third part, the house and lot in question was conveyed to the party of the second part, "in trust, however, for the sole and separate use, benefit and behoof of said party of the third part . . . . for her sole use and benefit separate and apart from her said husband and wholly free from his control, interference, debts and liabilities, curtesy, and all other interests whatsoever."

By an act of the Legislature of this State entitled

"An Act to amend chapter 55, Revised Statutes, 1889, entitled 'dower,' by adding a new section thereto," approved March 2, 1895, it was provided that, "When a wife shall die without any child or other descendants in being capable of inheriting, her widower shall be entitled to one-half of the real and personal estate belonging to the wife at the time of her death, absolutely, subject to the payment of the wife's debts." This act was carried forward into the revision of 1899, and is known as section 2938 of chapter 21 in relation to dower. The plaintiff predicates his right to an undivided one-half of the premises in question, upon this Act of 1895 (now section 2938, Revised Statutes 1899), insisting that defendants as devisees under his deceased wife's will are only entitled to the other half.

It will be observed that the Act of 1895, places no prohibition whatever upon the wife's disposition of her property during her lifetime, but provides that her widower shall be entitled to one-half of the real and personal estate belonging to her at the time of her death, absolutely, subject, however, to the payment of the wife's debts, a provision very similar to section 4518, Revised Statutes 1889, then in force, regarding the rights of a widow in the property of her husband at his death.

To appellant's first contention, that the deed of January 17, 1890, was intended to and did secure to Mary Byrnes (afterwards the wife of plaintiff) a separate equitable estate not only against her then husband but also against any future husband and free from all marital rights whatsoever, we can not agree. The deed does not so read, but on the contrary, provides in express terms that the property in controversy is conveyed to the party of the second part "in trust, however, to the sole and separate use, benefit and behoof of the said party of the third part . . . separate and apart from her said husband and wholly free from his control and interference," etc. Her then husband was not the

plaintiff in this action. He died, and plaintiff became the husband of said Mary Byrnes, through a subsequent marriage in 1896. Where title to land has been made to a trustee, as was done by the deed of January 17, 1890, to protect from a designated husband only, and that husband dies or the marriage relation for any cause becomes terminated, the estate at once becomes executed in the beneficiary, and if the widow marries again the trust is not revived, but the second husband will take his so-called common-law rights in the property, or such other right as by statute may have been substituted therefor or given in addition thereto. In the face of the clear and unambiguous language of the deed of 1896, we are not authorized to enter into the field of interpretation or speculation for the purpose of determining what might have been intended by the grantor, or to consider the relation of the parties to the deed at the time of its execution, or the situation attending the deed's delivery, or to take the statements made by the grantor at the time the deed was made, to change or destroy the meaning of language so plain and explicit as to have but one meaning. You may call to your aid attending circumstances to interpret language of an instrument of doubtful or uncertain purport or that is susceptible of a double meaning, but not to destroy, or give it a meaning at utter variance with the plain language employed. Interpretation should not go to the extent of working a complete distortion of the language interpreted.

Moreover, courts have always been slow to give to a deed a construction that would operate to defeat a husband of his marital rights over the property of his wife unless the intention of the grantor, in the deed, to create a separate estate in the wife free from that right is clearly expressed. In Richardson v. DeGiverville, 107 Mo. l. c. 432, this court in considering that question said: "The purpose to create a separate estate must clearly appear beyond a reasonable doubt; otherwise the husband will retain his ordinary legal

and marital rights over the property. (2 Story, Eq., sec. 1381.)" And in Burnley v. Thomas, 63 Mo. 390, in passing on the intent of the grantor the court said: "The character of the estate, whether it be separate or not in a married woman, will be determined by ascertaining whether the words employed in the grant manifest an unequivocal intent to exclude the power and marital rights of the husband." And so in McTigue v. McTigue, 116 Mo. 142, in speaking of the intent of the grantor in that case it was held, that the intention to exclude the husband from any participation in his wife's separate estate must appear by the deed itself. Otherwise the husband's rights of courtesy will prevail. In view of the foregoing expressions it is clear in this case that we should hold that the grantor did not intend by the deed of January 17, 1890, the restrictive words of which are "for her sole use and benefit separate and apart from her said husband," to create a use extending over all future coverture, but rather limited the same to the then existing marriage. And so it must be said now that, upon the death of his wife in 1898, without having made any disposition of the property during her lifetime, the plaintiff under the Act of 1895 was entitled to one-half of it absolutely, subject only to the payment of her debts.

In this view of the case it is unnecessary to discuss the question whether the Act of 1895 could affect property held by a woman, married or unmarried, under a deed of settlement so formulated as to create a separate equitable estate to the exclusion of all marital rights of any future husband.

From what has been said it must also follow that no error was committed by the trial court in excluding the testimony of Margaret Huette, in the attempt to show the purpose of the grantor in making the deed, from what he at the time said. The purpose of the deed was clearly expressed in its body. No outside aid was necessary to elucidate that purpose, nor was the cotemporaneous declaration of the

grantor offered admissible to explain away the purport of the language expressing it.

Though the estate vested in plaintiff's wife by the deed of January 17, 1890, could not be altered, changed or defeated by the provisions of the after Act of 1895 as appellant asserts, that does not imply, as the argument of appellants' counsel assumes, that the wife acquired and held her property with the right to dispose of it by will otherwise than by the mode and manner, and to the persons designated by the statute in force at the time of the taking effect of the will.

Whether the intent of the grantor in making the deed of January, 1890, to plaintiff's wife (then Mary Byrnes) was to create a separate use extending over all future covertures, or whether the deed itself clearly expresses that intent, or whether it was limited, as contended by respondent, only to her then husband and not to this plaintiff, are not questions the determination of which aid in the solution of the question of whether the property in suit could by will be disposed of by plaintiff's wife so as to defeat the provisions of the Act of 1895, which declare that when a wife shall die without any children or other descendants in being capable of inheriting, her widower shall be entitled to one-half of the real and personal property belonging to the wife at the time of her death.

No right of the plaintiff's wife to the land in controversy is or can be invoked in this case, to call for a discussion of the questions of vested rights of the wife. She is dead, and it is now a question of how the property belonging to her during life, is to be disposed of, and in that subject she could not be said to have had a vested interest which the Act of 1895 in any way disturbed. The chief difficulty that has arisen in this controversy has been in the failure of appellant's counsel to recognize the distinction between the right to own and hold property, and the right to dispose of

same by will.. The one is a natural right of the citizen,
which, when acquired under existing laws, becomes a vested
right, and not subject to be defeated by subsequent legisla-
tion; the other a creation of legislative enactment and sub-
ject at all times to legislative regulation and change.   So long
as plaintiff's wife was alive to enjoy the use of her property,
it belonged to her, free from legislative interference, and the
Act of 1895 could have no effect or influence upon it, or of
her use or disposition of it whatever, but when death came
and she could no longer enjoy it, her acquisition ceased, and
with it, the right to direct its future use and ownership only
as the legislative will was indicated by the statute then in
force upon that subject.

    As said, however, the interest of the plaintiff's wife to
this land is not involved; but the interest alone of those who
are to succeed to her estate (the plaintiff and defendants
herein), and as those interests could and did not attach (be
it the one derived through the law, or the other by force
of the will), until the death of plaintiff's wife, the Act of
1895 can not be said to have affected any vested interests
that was made to appear in the case; or in any manner to
have been retroactive in its operations.

    Until the death of plaintiff's wife in 1897, no legal right
to this property, whatever, was vested in either the plaintiff
or the defendants.   They had until then a bare expectancy,
that might have been defeated at any time by either the act
of the wife executing a deed, or by a change in the law direct-
ing a different channel for the future flow of the title of the
land after death of the wife.   The will under which the de-
fendants claim the property had no legal effect or power so
long as plaintiff's wife was living.   Until her death it was
as nothing.   It neither deprived her of any right in or to
the property, nor did it confer any right upon the defend-
ants, and as a consequence there was no vested rights under
or growing out of its execution that could be violated by the

Act of 1895, directing how her property then owned, which should remain undisposed of at her death, should be distributed.

The act in question is further assailed by the appellants on the ground that the title thereof is not sufficiently set out to meet the requirements of section 28 of article 4 of the Constitution, which provides, that no bill shall contain more than one subject which must be clearly expressed in its title. In commenting on this provision of the Constitution, this court, in State ex rel. v. Ranson, 73 Mo. l. c. 86, said: "It is universally held by the appellate courts of this State that the object of this provision was to prevent the c      ing in the same bill incongruous matters, and subjects having no legitimate connection or relation to each other, and in no way germane to the subject expressed in the title, and to prevent surprise or fraud upon members of the Legislature rather than embarrass legislation by making laws unnecessarily restrictive." In commenting on the same provision in State ex rel. v. County Court, 128 Mo. l. c. 427, it is also said; "It is sufficient if the title does not mislead, as to the chief topic of the act and that the minor features of it have a reasonable and natural connection with the subject named in the title."

While the title of the act in question may not be absolutely correct as a definition of the right conferred in the body of the bill, if the meaning of the term *dower* is to be considered as it was used and understood at common law, yet if we consider it in the light of the general meaning of that term (that with which one is gifted or endowed) it is difficult to understand how it could be thought a deception upon the members of the Legislature, or how it could have operated to mislead them as to the chief and only topic of the bill, however we might now think best to designate or classify it.

The act was to create a new right in a husband whose

wife may die without child or other descendants in being capable of inheriting. If the author of the bill was not absolutely correct in classifying the new right created by the bill, the title thereof was so suggestive as at least not to be misleading or deceptive.

The appellant further assails the judgment of the trial court herein on the ground that the possession of the devisees under the will was adverse to plaintiff, and that the estate of plaintiff's wife was in process of administration, and the probate court had ordered the executrix to take charge of the real estate in question, consequently partition would not lie. The first contention, we think, is clearly untenable. The will, as already seen, only passed title to one-half of the property to defendants. Having derived their rights under the will, defendants can not be heard to claim any other or greater title to the property than that given them by the will. And their possession having been taken under the will is limited to such undivided interest, so that the plaintiff, as tenant in common, is entitled to maintain this suit.

Also, there is nothing in the point that the estate of plaintiff's wife was in process of administration and the probate court had ordered the executrix to take possession of the real estate and rent the same. Such possession was merely temporary to enable the executrix to rent the property during the period of administration, and in nowise adverse to the heirs and devisees, so as to defeat partition in the meantime. From what has been said herein it follows that the motion to strike out the part of defendants' amended answer above quoted was properly sustained by the trial court, and that its judgment for plaintiff was right and should be affirmed, and it is so ordered. All concur.

### ON REHEARING.

ROBINSON, J.—After due consideration of the additional authorities to which our attention has been called by

the able counsel, on the rehearing of the same, we still adhere to the views, as expressed in the foregoing opinion, as originally written, and adopt same now as the opinion of the court on rehearing. All concur.