# THE STATE ex rel. KINSEY v. MESSERLY et al., Appellants.

### Division Two, July 3, 1906.

1. **JUSTICES OF PEACE: Fees: Act 1899: Barnett Law: Constitutionality: General and Special Law.** The act of 1899, known as the Barnett Law, amending the then existing statute which allowed justices of the peace throughout the State the same fees, by providing "that in cities having a population of fifteen thousand and under thirty-five thousand and lying wholly within one township, except cities operating under special charters, all fees collected by justices of the peace in criminal cases shall be turned into the county court, and in lieu of such fees the county court shall allow the justices of the peace fifty dollars per month," is a special law, and would not have been more so if it had by its terms been made applicable to Sedalia township alone; *and*, being applicable to only one township in the State, is in direct conflict with the constitutional provision which says that "the General Assembly shall not pass any local or special law . . . regulating the fees or extending the powers and duties of aldermen, justices of the peace," etc., and with the other constitutional provision which says that "in all other cases where a general law can be made applicable, no local or special law shall be enacted."

2. **————: ————: ————: ————: ————: Acquiescence and Acceptance: Waiver.** Notwithstanding the statute placing justices of the peace in a certain town upon a salary, and requiring them to pay their fees in criminal cases into the county court, was unconstitutional, yet if relator paid the fees collected by him to the court and each month so long as he remained in office accepted from the court the salary the act allows, and made no protest to the court against paying over the fees, nor even a formal verbal demand therefor, and brought no suit therefor until he was out of office, he will be held to have accepted the salary provided by the act in lieu of fees to which under the general law he was entitled, and to have waived the unconstitutionality of the amendment, and is now bound by such acceptance.

3. **WAIVER: Unconstitutional Act.** Where the constitutional right in question affects the protection of the property rights of the citizen, it is competent for him to waive the protection, and to consent to such action as would be invalid if taken against his will.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

REVERSED AND REMANDED (*with directions*).

*C. C. Kelly* for appellants.

(1)  Relator having compromised his claim for fees under the general law relating to fees of justices of the peace, and the compromise having been fully effected, relator can not now claim fees that were earned prior to February 4, 1902, the date of such compromise.  (2)  A public officer may accept as full payment less than the amount due under the law for fees for past services and is bound by such acceptance.  Thompson v. Cullers, 35 S. W. 412; Bank v. Fink, 24 S. W. 937; Oberborfer v. Louisville School Board, 85 S. W. 696; People v. Dayton, 50 How. Pr. 143; Ciples v. Blair, Rice Ch. 60.

*W. D. Steele* and *John D. Bohling* for respondent.

(1)  The act of May 15, 1899, amending section 4997, Revised Statutes 1899, is in direct conflict with section 53, article 4, of the Constitution.  State v. Walsh, 136 Mo. 400; State v. Buchardt, 144 Mo. 84; Cooley, Const. Lim. (6 Ed.), 482; State v. Hill, 147 Mo. 68; Holden v. James, 11 Mass. 396; Lewis v. Webb, 3 Me. 326; Wally's Heirs v. Kennedy, 2 Yerg. (Tenn.) 544; Calder v. Bull, 3 Dal. 388; In re Picquet, 5 Pick. 65; Durham v. Lewiston, 4 Greenl. (Me.) 140; Budd v. State, 3 Hump. (Tenn.) 483; Officer v. Young, 5 Yerg. (Tenn.) 320;  Van Zant v. Waddell, 2 Yerg. (Tenn.) 260; Daly v. State, 13 Lea (Tenn.) 231; Woodward v. Brien, 14 Lea (Tenn.) 523.  We admit that legislation has been upheld in various States based upon the population of cities, but this rule is not even uniformly.  Devine v. Comr's, 84 Ill. 590.  The act in question does not restrict its operation to the population of

cities, but exempts all cities of a certain population from its provision that do not lie wholly within one township, and cities operating under a special charter. The duties of the justice of the peace in a township containing a city of the specified inhabitants named in the act are identical in every particular with the duties of a justice of the peace of a township containing a city of like inhabitants operating under a special charter, or a city not lying wholly within one township, so the act might as well have provided that it should apply to every city of a certain specified population containing a certain number of churches, or a certain number of schoolhouses, or certain kinds of churches, or waterworks.  If this kind of legislation can be upheld, then every city in the State that contains some distinguishing feature, whatever it may be, from certain other cities in the State can have a local law enacted regulating the fees of the justices of the peace within its borders.  (2) The contract pleaded in bar to the suit is against public policy and not binding.  A public officer is not entitled to compensation by virtue of a contract, expressed or implied; the right of compensation can only exist as a creation of law and as an instance of the office.  Given v. Daviess County, 107 Mo. 603; Bates v. St. Louis, 153 Mo. 18; State ex rel. Walbridge, 153 Mo. 194.  An agreement to reward a public officer for the doing of that which it is his duty by law to do is void as against public policy.  Kick v. Merry, 23 Mo. 72; Thornton v. Railroad, 42 Mo. App. 58.  It is a matter of public policy; "public officers can not legally contract to increase or diminish their statutory compensation, nor can they bind themselves to forego resort to the statutory remedy for the collection of fees."  9 Am. and Eng. Ency. Law, 914.  Where the salary or fees of an officer is illegally reduced during his term, the acceptance of the amount allowed will not estop

him from claiming the remainder. Butler County v. James, 25 Ky. Law Rep. 801, 76 S. W. 402.

GANTT, J.—This is an appeal from the judgment of the circuit court of Pettis county awarding a peremptory writ of mandamus in favor of the plaintiff against the defendants, as judges of the county court of said county, for a balance of $1,208.95, alleged to be due plaintiff as fees as justice of the peace of Sedalia township for the period from September 1, 1899, to June 1, 1902. The total amount of said fees for the said period was $2,948.10, but as the county court paid relator $1,761.65 as salary for the same time under the act of 1899, known as the "Barnett Law," being an amendent to section 5005, Revised Statutes 1889, the relator in no event is entitled to a judgment for more than $1,208.95.

The pleadings directly assail the constitutionality of the amendment of 1899, now section 3261, Revised Statutes 1899, and jurisdiction of this appeal is in this court.

I. If the amendment of 1899 was valid constitutional legislation then plaintiff was not entitled to recover. Section 5005, Revised Statutes 1889, prescribes the fees which should be allowed justices of the peace throughout the State, for the several duties they might perform, and they were entitled to no other compensation.

The amendment to that section in 1899, was in these words: "Provided, that in cities having a population of fifteen thousand and under thirty-five thousand and lying wholly within one township, except cities operating under special charters, all fees collected by justices of the peace in criminal cases shall be turned into the county court, and said court shall deposit said fees with the county treasury. The justices of the peace shall account to the county courts and turn

in all such fees at each regular meeting of the court. In lieu of all fees in criminal cases the county court shall allow the justices of the peace the sum of fifty dollars per month." [Laws 1899, p. 215.]

This amendment, if valid, went into effect August 20, 1899. In 1901 the section was further amended so as to make the salary seventy-five dollars a month instead of fifty dollars. [Laws 1901, p. 174.]

The county court of Pettis county accepted the amendment of 1899 as valid and controlling and began paying the justices of the peace for Sedalia township, salaries from September 1, 1899, instead of allowing them fees under the general law in force prior to the enactment of the amendment of 1899.

The defendants as judges of the county court now deny that relator is entitled to any fees, but must be content with the salary paid him by the court for the time for which he now claims fees.

It is conceded by all parties that the act of 1899, amending section 5005, Revised Statutes 1889, did not and could not apply to any city in Missouri except Sedalia. No other city was in the special situation at that time nor likely to be. The act was intentionally drawn to fit the peculiar circumstances surrounding Sedalia and to exclude all other cities in the State of like population. Section 53 of article 4 of the Constitution of Missouri provides: "The General Assembly shall not pass any local or special law. . . . regulating the fees or extending the powers and duties of aldermen, *justices of the peace,* magistrates or constables." The same section after enumerating divers other cases in which no special or local law shall be passed, further provides: "In all other cases where a general law can be made applicable, no local or special law shall be enacted."

Few of the provisos of our organic law are so eminently wise and salutary as this last-quoted section of the Constitution. It is of the highest interest to the

State that its laws should be general and operate as far as possible equally in all sections of the State and upon all subjects of legislation. This court has again and again defined what is a general and what is a special law, but in practical legislation it would be hard to define in one section a more pronounced example of each than is to be found in section 3261 since the amendment of 1899. The original section as it stood prior to the addition of that proviso, was a general law which affected every justice of the peace in the State. Whereas, the proviso was drawn with the greatest labor to insure that it should apply to but one township in the State, to-wit, Sedalia township. Notwithstanding the language of the act purports in some respects to be a general law, the numerous exceptions in the proviso of 1899 pared it down until it was impossible for it to have the slightest effect on the fees and compensation of justice of the peace in any other township in the State. Indeed, the disguise is so flimsy that it needs neither argument nor citation of authorities to show that the proviso of 1899 was and is a mere local law applicable and intended to apply to Sedalia township alone, and hence is in direct conflict with section 53 of article 4 of the Constitution herein before recited. The duties of a justice of the peace in a township containing a city of the specified inhabitants named in the act of 1899, are identical in every particular with the duties of a justice of the peace of a township containing a city of like inhabitants operating under a special charter, or a city not lying wholly within one township, so that the act might as well have applied to every city of a certain specified population containing a certain number of churches and school houses. We think the circuit court properly held that the proviso of 1899 to section 3261, Revised Statutes 1899, was unconstitutional as a local and special law regulating the fees of justices of the peace.

II. But granting that the proviso was and is void because unconstitutional, does it follow that the relator should recover from the county the fees sued for? It is to be remembered that this act on its face purported to take effect on the 20th of August, 1899, and the county court being of the opinion that it was their duty to enforce the law began to pay the justices of the peace of Sedalia township salaries as provided by the act in lieu of fees in criminal cases. Relator as one of these justices accepted this salary from September first, 1899, to June first, 1902, and made no protest to the county court that he was entitled to his fees, nor did he refuse to accept the salary provided by this act every month of that time until the act was held unconstitutional by the circuit court in June, 1902, nor did he take any steps to collect the money from the county until after his term of office had expired. It is true that it appears from plaintiff's testimony that he wrote and published articles in one of the newspapers of Sedalia, in which he denounced the act as unconstitutional and criticised the county court, but his own testimony shows that he never at any time made even a formal verbal demand of the court to allow him his fees instead of his salary provided by this law. It is entirely plain that there was no such thing as a formal demand upon the county court for his fees as such instead of a salary. Much has been said in the briefs of counsel in regard to the contract made between the relator and the county judges by which he agreed to restore and turn into the county treasury $125.75 of criminal costs which he had collected and which the court demanded that he should turn into the treasury on the presumption that the act was constitutional. While this agreement emphasizes the construction which the county court places upon the act of 1899, and the acquiescence of relator in that construction, we think it is but additional evidence that from September first, 1899, until June first, 1902, the relator waived the unconstitutionality of the act by

accepting each month during all that period the salary provided by the act in lieu of his fees under the general law, and having accepted the same in full payment for his services he ought now to be bound by such acceptance.   [Henderson v. Koenig, 192 Mo. 690.]

In the last-cited case this court in Banc had occasion to consider the right of an officer to waive an unconstitutional provision.   In this case, as in that, where the constitutional right in question affects the protection of the property rights of the citizen, it is competent for him to waive the protection and consent to such action as would be invalid if taken against his will.   [Cooley on Constitutional Lim. (7 Ed.), p. 250; Merrill v. St. Louis, 83 Mo. 251.]   In this case the only parties interested are the relator and Pettis county, and the issue involves the property rights of the relator to fees only.   A waiver occurs when "one in possession of any right, whether conferred by law or by contract,   and with full information of the material facts, does or forbears the doing of something inconsistent with the exercise of the right or of his intention to rely upon it; thereupon he is said to have waived it, and is precluded from claiming anything by reason of it afterwards."   [Williams v. Railroad, 153 Mo. l. c. 519; Bishop on Contracts (Ed. of 1887), 792.]

In this case the plaintiff not only had all the information when he accepted the salary for nearly two years, that he has now, or had when he begun this suit, and yet month by month he accepted a warrant for the salary prescribed by the unconstitutional act.   Moreover, it appears that he was taking legal advice during this time, and yet he took no steps to compel the county court to pay him his fees under the general law.   The taking of his salary, monthly, was wholly inconsistent with his right to the fees. If entitled to the one he was not entitled to the other.   We think the evidence establishes a waiver within the meaning of our laws, and that relator is not entitled to recover.

The judgment of the circuit court is reversed, with directions to enter judgment quashing the alternative writ of mandamus heretofore issued and dismissing · the bill at relator's cost.

*Burgess, P. J.,* and *Fox, J.,* concur.