THE STATE EX REL. LESTER R. HOLLAWAY v. THOMAS H. KNIGHT, Justice of Peace.—21 S. W. (2d) 767.

Court en Banc, October 31, 1929.

1242

*W. R. Hedrick* for relator.

*E. M. Tipton* for respondent.

BLAIR, J.—This is an original proceeding in prohibition. By stipulation the case has been submitted upon briefs without oral argument. Relator's statement of the case has been adopted by respondent and we quote same in full:

"The respondent in November, 1926, was duly elected justice of the peace within and for Blue Township, Jackson County, Missouri, and was duly qualified and now holds the office of justice of the peace for said township for a term expiring November 4, 1930. During the Fifty-fifth General Assembly which convened at Jefferson City in January, 1929, there was introduced Senate Bill No. 658 which was passed and approved May 31, 1929, and which became effective ninety days after adjournment of such session, on August 29, 1929. Such act, in effect, provided that in counties the size of Jackson County, or a county from 300,000 to 600,000 population, a justice of the peace could not take jurisdiction of a cause of action unless

the defendant resided in the township in which the justice was elected or appointed, or unless the defendant should be found in such township. On the 16th day of September, 1929, suit was filed in the office of the respondent by one Harvey Burrus, a resident of Blue Township, on an account against the relator, Lester R. Hollaway, a resident of Kaw Township. Kaw Township is an adjoining township to Blue Township, both in Jackson County, Missouri. Thereupon the respondent accepted such suit, issued summons thereon and the same was served upon the relator Hollaway in Kaw Township, commanding him to appear for trial on the 1st day of October, 1929.

"The relator Hollaway thereupon filed his petition for prohibition in this court seeking to prohibit respondent from proceeding with such suit on the theory that Senate Bill No. 658 deprived respondent of his jurisdiction as a justice of the peace after it became effective August 29, 1929.

"Respondent thereupon entered his appearance, consented to the issuance of the preliminary rule, filed his return to the rule, and the case was submitted upon the relator's motion for judgment on the pleadings. Respondent contends that Senate Bill 658 is unconstitutional and void for many reasons, but particularly because it improperly discriminates between litigants and between justices of the peace or various justices of the peace of the State of Missouri, and that Senate Bill 658 is a local and special law, and further that the said Senate Bill is unconstitutional in that the title to the said act is insufficient."

Said Senate Bill No. 658 appears in Laws of 1929 at page 145. It provides for the addition of a new section to Article II, Chapter 22, Revised Statutes 1919, on jurisdiction of justices of the peace, to be known as Section 2722-a. So far as we are here concerned with the act, it reads as follows:

"In all counties of this State which now have or may hereafter have a population of more than 300,000 inhabitants, and less than 600,000 inhabitants every action recognizable before a justice of the peace shall be brought before some justice of the township, either, first, wherein the defendants, or one of them, resides, or, second, wherein the plaintiff resides, and the defendants, or one of them, may be found; . . . Every action instituted before any justice of the peace shall be tried at the place where said justice of the peace has his office or court, and in the district over which he presides as such, and it shall be illegal for any such justice to issue any process, assume jurisdiction in any such action, or render any judgment in any such proceeding brought before him unless the said process is issued, proceedings had, and judgment rendered at the place where his said court is located, in session, and within the district where he presides; any and all such proceedings not had in conformity with this

section shall be null and void, notwithstanding any waiver or agreement of the parties to the contrary, except where such actions are transferred from any justice of the peace, as provided by law; and whenever any such justice shall remove his office or place of holding court out of the district for which he was elected or appointed, he shall be deemed to have vacated his office.''

In his brief respondent contends that the act is invalid because it is a special law, in that it applies only to Jackson County, and because it contains an unreasonable, arbitrary and unjust classification of justices of the peace; and also that it is invalid because the title to the act is defective, all in violation of certain sections of the Missouri Constitution. We will consider these contentions in the order stated.

At the present time the act can apply only to justices of the peace in Jackson County because it is the only county in the State having more than 300,000 and less than 600,000 inhabitants. By its terms the act applies to all counties of this State ''which now have or may hereafter have a population of more than 300,000 inhabitants,'' etc. So that any county in the State which hereafter passes the 300,000 mark in population will automatically come within the terms of the act. Nor can it be said that the lawmakers could not reasonably anticipate such a situation. The county of St. Louis, adjacent as it is to the great and growing city of St. Louis with its restricted and congested urban area, is fast acquiring a large suburban population and may reasonably be expected, within a few short years at most, to reach the minimum population specified in the act. Nor can it be said that other counties in the State might not attain such a population as to be brought within the terms of the act.

The classification of counties or cities according to population, so that other counties and cities may come within the terms of the law in the future, does not make the act a special law in violation of Section 53, Article IV, of the Missouri Constitution, although such act only applies to one county or city in the State at the time of its enactment because the population thereof is the only one within the limits fixed by the act at the time of its passage. [State ex inf. Barker v. Southern, 265 Mo. 275, l. c. 286, 177 S. W. 640; State v. Keating, 202 Mo. 197, l. c. 209, 100 S. W. 648; State ex rel. Attorney-General v. Speed, 183 Mo. 186, l. c. 201, 81 S. W. 1260; State ex rel. Dickason v. County Court, 128 Mo. 427, l. c. 442, 30 S. W. 103, 31 S. W. 23.]

In the cases of State ex rel. Taggart v. Perkins, 283 Mo. 161, 223 S. W. 406, and State v. Logan, 268 Mo. 169, 186 S. W. 979, cited by respondent, the classification was not made on a population basis alone, but also upon the fact that circuit court was held in two or more places in the county. Each act considered described Jasper County alone as definitely as if it had been made applicable only

to that county in explicit terms. The acts there involved were clearly special legislation.

In State ex rel. Kinsey v. Messerly, 198 Mo. 351, 95 S. .W. 913, cited by respondent, the proviso requiring justices of the peace to turn in their fees in criminal cases and giving them a salary in lieu thereof, applied by its terms only to cities then having 15,000 and less than 35,000 population and lying wholly within one township, except cities operating under special charters. The act applied only to one city in the State—Sedalia. It did not purport to apply to cities thereafter coming within the description contained in the act. The act was therefore clearly a special or local law.

In Bridges v. Holdout Mining Co., 252 Mo. 53, 158 S. W. 579, the act held unconstitutional as a special law required a filing fee to be paid in counties constituting a separate judicial circuit with two judges of the circuit court and no criminal court. The court said: "This law seems to have been adroitly framed so that it would never apply to but few and possibly only one county in the State." The provision limiting the application of the act to counties having no criminal court was held to brand the act as special in spite of the language "in all counties in this State which now constitute or may hereafter constitute a separate judicial circuit" usually found in general statutes.

The cases of Woolley v. Mears, 226 Mo. 41, 125 S. W. 1112, and State v. Walsh, 136 Mo. 400, 37 S. W. 1112, dealt with statutes which made acts crimes when committed in certain places which were not crimes when committed elsewhere in the State, without having any real basis for such distinction.

The act before us is general in its terms and applies to all justices of the peace in all counties in the State having or hereafter acquiring the designated population. In so far as its classification on the basis of population is concerned the act is a general and not a special law.

But a law general so far as population is concerned may be a special law if the classification made therein is unnatural, unreasonable and arbitrary so that the act does not apply to all persons, objects or places similarly situated. [State ex rel. Saline County v. Wilson, 288 Mo. 315, 232 S. W. 140.]

Respondent asserts that the 1929 Act before us is special because the jurisdiction of the justices of the peace is made to depend upon the population of the county, while the unit for justices of the peace is the township and the act is unreasonable in that under it the resident of the county affected may not be sued in an adjoining township while another resident may be so sued in counties not within the act and, further, because the act is unreasonable in that it denies the right to sue a defendant in an adjoining township, but permits him to be sued if he is found in such adjoining township where the suit

is filed. The latter objection could as well be urged against our general statutes, which require the action in the circuit court to be brought in the county where defendant resides or in the county where plaintiff resides and defendant may be found. [Sec. 1177, R. S. 1919.] We know of no constitutional provision requiring the General Assembly to legislate concerning justices of the peace on a township rather than on a county basis. Unless there is some constitutional objection the General Assembly has a free hand in the matter.

The reasonableness of the classification in denying justices of the peace the right to send their process to adjoining townships in counties of over 300,000 population and permitting the same thing to be done in counties of smaller population is not so clear. Relator has not seen fit to brief this point, although the respondent has raised it and that task devolves upon the court, to the end that the case may be correctly decided. In State ex inf. Barrett ex rel. Bradshaw v. Hedrick, 294 Mo. 21, l. c. 72, 241 S. W. 402, l. c. 419, this court laid down the rule governing classification of the subjects covered in statutes as follows:

"Under our Constitution, in so far as the question in this case is concerned, the Legislature must find in existing circumstances and conditions distinctions pertaining to some of the persons or objects within the State which do not pertain to the rest and which thus delimit a class. Such distinctions must not be arbitrary nor unrelated to the purposes of the contemplated legislation. They must be germane to the reason for the enactment which is to be applied to the class marked out by them. 'It is settled law that a classification for legislative purposes "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis" . . . and also that the, distinction observed in marking the boundaries of the class to which the resulting enactment shall apply must be one which "is not arbitrary, but rests upon some reason of public policy growing out of the condition of the business of such class" . . . ; it "must be grounded upon a reason of a public nature" and "must be of such a nature as to mark the objects thus designated as peculiarly requiring exclusive legislation" and "as well, in some reasonable degree, at least, account for or justify the restriction of legislation." ' [State ex rel. v. Railroad. 246 Mo. l. c. 514, 515; State v. Julow, 129 Mo. l. c. 177; State v. Miksicek, 225 Mo. l. c. 574 et seq.; State ex rel. v. Kimmel, 256 Mo. l. c. 640 et seq.; State ex rel. v. Revelle, 257 Mo. l. c. 540, 541.]

"It is sometimes said that the distinctive features which mark out a class as the proper subject of legislation applying to it alone must be such as to give rise to a 'necessity' for distinctive legislation, or 'require' such legislation. [State ex rel. v. Miller, 100 Mo. l. c. 448.]

The words thus used must not be misunderstood to establish a rule that though a class be set off by conditions peculiar to it alone and germane to lawful purposes of legislation, yet laws respecting such classes cannot be enacted validly unless there be an actual *necessity* that they be passed or that their passage is absolutely *required* by existing conditions. Whenever a distinction exists which defines a class and separates it from the whole, the necessity or need or requirement for a law affecting the class alone need be no more compelling than it would have to be to justify a law affecting the whole if the distinctive feature which marks out the class was not distinctive, in that sense, but was a quality of every person and object which makes up the whole. This is recognized, impliedly, in the quotation found at page 499 in the case last cited and, in fact, must be true, so far as concerns this case, unless the courts are to be made the judges of the need for legislation and its propriety as well as its validity—a position not yet taken.

"Early in the history of the consideration of the question whether an act was to be held invalid as special legislation and in conflict with Section 53 of Article IV of the Constitution, this court announced that such 'question should be approached with great caution and should be considered with the utmost care and deliberation. The nullity and invalidity of such a law must appear beyond a reasonable doubt before we can assume to pronounce it void. The rule is founded on the fact that the judiciary ought to accord to the Legislature as much purity of purpose as it claims for itself; as honest a desire to obey the Constitution, and, also, a high capacity to judge of its meaning.' [Ewing v. Hoblitzelle, 85 Mo. l. c. 70; State ex rel. v. Wofford, 121 Mo. l. c. 68; State ex inf. v. Southern, 265 Mo. l. c. 284; Ex parte Loving, 178 Mo. l. c. 203; Commissioner ex rel. v. Smith, 4 Bin. 117; Byrne v. Stewart, 3 Desauss. l. c. 476-477; Ogden v. Saunders, 12 Wheat. 213; Dartmouth College Case, 4 Wheat. 518.] This court long ago approved the doctrine that the validity of a legislative classification does not depend upon numbers. [State ex rel. v. Tolle, 71 Mo. l. c. 650.] If all the members of a class with respect to which separate legislation is permissible are included, that is sufficient whether the members of the class are many or few. [State ex rel. v. Gordon, 245 Mo. l. c. 31, et seq.; State ex inf. v. Southern, supra; Elting v. Hickman, 172 Mo. l. c. 257.]

"A general law may include all persons. Such inclusion is justified when the situation or condition of all is alike with respect to the feature which calls the law into being. But a law is not necessarily special because it does not include all persons. It is not necessary that it shall include a majority. No court has attempted to fix a per cent of the population, or objects or places within a state, below which a legislature may not go in respect to the number of persons, objects

or places in a class to which a general law is made applicable. Number is not the test. The basis of sound legislative classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. A law may not include less than all who are similarly situated. If it does, it is special and, therefore, invalid, because it omits a part of those which in the nature of things the reason of the law includes. The question is not whether, considering all the circumstances which exist, the Legislature might not constitutionally make a law which would include a larger class. On the contrary, it is whether it appears beyond a reasonable doubt that there are no distinctive circumstances appertaining to the class with respect to which it has legislated which reasonably justify its action in restricting the operation of the law to the persons, objects or places to which the law is made applicable.''

The rule is so well stated in the foregoing excerpt in the Bradshaw case and is so well fortified by the cases there cited, that other cases need not be cited by us. The constitutional inhibition is not against the General Assembly doing the things specified in subdivisions 4, 17, 18, 32 and 33, of Section 53, Article IV, of the Missouri Constitution, which respondent contends have been violated, but is against the doing thereof by special laws.

Before the act of the General Assembly can be declared to be a special law because the classification of the persons, objects or places to which the act applies is arbitrary or (and) unreasonable, it must be made to appear beyond a reasonable doubt that ''there are no distinctive circumstances appertaining to the class with respect to which it has legislated which reasonably justify its action in restricting the operation of the law to the persons, objects or places to which the law is made applicable.'' The legislative act must not be viewed with a harsh, critical or unfriendly eye. It merits indulgence of the presumption, not only of the fairness and good faith of the lawmaker, but also that the act has been enacted in conformity to constitutional requirements.

How stands the act in question when so tested? We cannot say that cogent reasons do not exist justifying the lawmaker in making a distinction between the territorial jurisdiction of justices of the peace in small counties and the jurisdiction of justices of the peace in very populous counties. Necessarily, a county having more than 300,000 inhabitants must contain within its borders or be adjacent to a large city. Where such city is within a county, the township or townships containing such city necessarily adjoin several other townships of a rural character or, at least, much less densely populated. If suits can be instituted in these adjoining townships and city defendants, perhaps without adequate means of transportation, are dragged out into outside or rural townships to defend such suits,

great confusion might arise and unjustifiable harassment and annoyance of defendants result in the prosecution of suits having no foundation in fact. On the other hand, rural defendants might suffer like annoyance and harassment in being dragged into urban townships where numerous justices of the peace are authorized by law. Suits may be filed under Section 2722, Revised Statutes 1919, in any township adjoining the one where the defendant resides, and the city defendant might be annoyed by successive suits before country justices in several adjoining townships. In a rural township prejudice might exist against a city defendant which might not exist against a resident of an adjoining rural township in the same role, or the country defendant might suffer the same disadvantage in appearing before the city justices.

The classification attempted in the act before us could not be so readily accomplished on the basis of the population of the township as upon the population of the county, because of the great difference in population between the townships in a county having more than 300,000 inhabitants. Any reasons of this kind, or others equally persuasive, may have moved the lawmakers to enact the law making the distinction complained of, and we cannot say beyond a reasonable doubt that such distinction or classification is arbitrary, unjust or unreasonable.

In State ex rel. Rowan v. Pollock, 310 Mo. 620, 276 S. W. 20, cited by respondent, the limitation of the jurisdiction of the justices not only depended upon the population of the township, but upon the fact of whether or not the justice was a salaried justice rather than one paid by fees only. The classification based upon the method of the payment of the salary of the justice of the peace had no bearing whatever upon the qualifications of that officer or the convenience of litigants. Indeed it made it inconvenient for many litigants to deny jurisdiction to the fee justices, because many of them lived miles from the office of a salaried justice of the peace. There the classification was clearly arbitrary and unreasonable.

In State ex rel. Saline County v. Wilson, 288 Mo. 315, 232 S. W. 140, also cited by respondent, the law held to be invalid was an act providing that, upon appeal in all cases, whether at law or in equity, where a referee had been appointed and had made a report to the trial court, the appellate court should review the evidence as in equity cases, etc. The act was held to be invalid because it divided a natural class, namely actions at law, into subdivisions and required the law to be administered upon appeal in one way in cases falling under one subdivision and in another way in those cases coming within the other subdivision. The classification was properly held to be arbitrary and unreasonable.

Under that act, the findings of fact made by the trial judge could not be disturbed upon appeal in a law case, if based upon substantial evidence, provided the trial judge heard the witnesses testify or read their testimony contained in an ordinary deposition. But, if he based his finding of facts upon the transcript of substantial testimony accompanying the referee's report in an action at law, such finding of facts could not be taken as conclusive. This classification was properly held to be arbitrary and unreasonable and without any proper basis.

We rule that the act before us is not a local or special law within the inhibition of the Constitution.

Finally, the act is assailed as violative of Section 28, Article IV, of the Missouri Constitution, in that the subject of the act is not clearly expressed in its title. The title reads: "An Act to amend Article 2, Chapter 22, of the Revised Statutes of Missouri, 1919, entitled 'Jurisdiction of justices of the peace,' by adding a new section thereto to be known as section 2722a."

The only case cited by respondent is St. Louis v. Weitzel, 130 Mo. 600, 31 S. W. 1045, which lays down the familiar and generally recognized rule (applied in that case to a city ordinance which was measured by a charter provision similar to Section 28, Article IV, of the State Constitution), that "the evident object of the provision of the organic law relative to the title of an act was to have the title like a guide board, indicate the general contents of the bill, and contain but one general subject which might be expressed in a few or a greater number of words. If those words only constitute one general subject; if they do not mislead as to what the bill contains; if they are not designed as a cover to vicious and incongruous legislation, then the title can stand on its own merits, is an honest title and does not impinge on constitutional prohibitions."

It is not contended that the act before us contains more than one subject. The title clearly indicated that the act would deal with the subject of jurisdiction of justices of the peace and only with that subject. But the legislator and the public were bound to know that anything germane to that subject might be dealt with in the body of the act. The subject dealt with in the bill certainly is not incongruous with the subject set forth in its title. It was not necessary to set out in the title specifically or in detail the nature and character of the proposed legislation in respect to such jurisdiction. The legislation embodied in the bill was clearly germane to the subject set forth in the title. [State ex rel. Attorney-General v. Ranson, 73 Mo. 78, l. c. 86; O'Brien v. Ash, 169 Mo. 283, l. c. 299, 69 S. W. 8; De Both v. Rich Hill Coal Co., 141 Mo. 497, l. c. 503, 42 S. W. 1081; State ex rel. Railways Co. v. Wiethaupt, 231 Mo. 449, l. c. 459, 133 S. W. 329; State v. Hurley, 258 Mo. 275, l. c. 278, 167 S. W. 965; State

ex inf. Barrett, etc., v. Hedrick, 294 Mo. 21, l. c. 62, 241 S. W. 402; State v. Thomas, 301 Mo. 603, l. c. 615, 256 S. W. 1028.]

We cannot agree with respondent that the act in question is unconstitutional and therefore invalid for any of the reasons urged by him. Our provisional rule heretofore issued should therefore be made absolute. It is so ordered. All concur.