GREER v. HUNT COUNTY. (No. 372–3412.)*

(Commission of Appeals of Texas, Section B. March 28, 1923.)

1. Counties ⬤⟳74(3) — Order fixing county treasurer's salary held void as changing from commission to salary basis; "commission basis" or "salary basis."

An order of the county commissioners' court fixing the salary of the county treasurer at $1,200 per annum held void as substituting a salary for a commission basis, contrary to Rev. St. art. 3875, relating to maximum commissions, notwithstanding article 3873, conferring upon the commissioners' court power to reduce such maximum, the controlling element in determining whether the amount received is upon a commission or salary basis being whether that amount, by whatever name called, is absolute and fixed, regardless of what the legal commissions may be, or is made contingent upon earning that amount as commissions.

2. Counties ⬤⟳74(3) — Acceptance by county treasurer of less salary than that to which he was entitled held not to preclude recovery of balance.

Where the county treasurer's salary was fixed at $1,200 a year by a void order of the commissioners' court, acceptance by the treasurer of such salary, which was less than he was entitled to as commissions under the statute, held not to preclude him from afterwards demanding the balance to which he was legally entitled, since a debt fixed in amount and absolutely payable cannot be discharged by payment and acceptance of a less amount; payment and acceptance of such amount furnishing no consideration for the relinquishment of the balance owing.

3. Counties ⬤⟳74(3) — County treasurer turning over balance to successor in office held not thereby precluded from recovering commissions in excess of void order fixing salary.

Where by a void order the county commissioners' court fixed the county treasurer's salary at $1,200 a year, that the treasurer upon the expiration of his term of office turned over to his successor the entire balance in his hands without retaining commissions to which he was entitled by law exceeding the salary fixed in the order held not to preclude him from recovering such commissions, Rev. St. art. 2444, requiring the treasurer to turn over all funds belonging to the county to a county depository to be checked against by virtue of article 2449, and article 3888, authorizing the retention of fees, being limited to offices named in article 3881.

4. Counties ⬤⟳213 — Audit of claim by commissioners' court held not a prerequisite to suit.

Rev. St. art. 1366, providing that no claim against the county can be sued upon unless it shall first have been presented to the commissioners' court, and such court shall have neglected and refused to audit and allow the same, held not to make an audit of a claim a prerequisite to filing suit.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by J. L. Greer against Hunt County. Judgment for plaintiff was reversed by the Court of Civil Appeals (214 S. W. 605), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Hall & Peak, of Greenville, for plaintiff in error.

Clark & Sweeton, of Greenville, for defendant in error.

McCLENDON, P. J. J. L. Greer brought this suit against Hunt county for balance due him on commissions as county treasurer from November 14, 1914, to December 2, 1918. The suit was filed on November 21, 1918, and the trial court sustained a special exception which pleaded the statute of limitations of two years as to all amounts accruing before November 21, 1916. The trial was to the court without a jury, and judgment was rendered in favor of plaintiff for $1,633 besides interest. This judgment was reversed, and judgment rendered in favor of Hunt county by the Court of Civil Appeals. 214 S. W. 605.

The facts which control the issues in the case are substantially without dispute. At the December term, 1909, of the commissioners' court of Hunt county the following order was passed:

"Ordered by the court that the county treasurer's salary be fixed at $1,200 per annum, same to take effect at the expiration of Louis Payne's present term, but on December 1, 1910, at the latest."

Greer was elected county treasurer at the November election, 1914, and was re-elected in November, 1916. He was defeated in the 1918 election and surrendered the office to his successor on December 2, 1918. The commissions which he would have been entitled to under the statutes (R. S. arts. 3873–3875) amounted during each year of his tenure of office to more than the $2,000 maximum. The commissioners' court made no order affecting the amount of the treasurer's compensation other than the order of 1909 above quoted. During each month of Greer's incumbency the commissioners' court issued to him

a warrant for $100 as his monthly salary, and each of these warrants was paid to him by check drawn by himself on the account of the county in the county depository. The trial court made the following findings of fact, which are fair conclusions to be drawn from the testimony:

"That at the time plaintiff was elected and qualified in 1914 he knew of said order and that the county treasurer had been receiving a salary of $1,200 per annum thereunder; that the plaintiff's salary was paid to him in monthly installments of $100 each; that he received the same without formal protest, but that he did at various times during his incumbency complain to the county judge and two other members of the commissioners' court that he was not being paid enough for his services and thought that the commissioners' court ought to allow him more money; that during the time he was so receiving said salary he had no intention of claiming the commissions allowed by law, but upon one occasion he did have an attorney to go before the commissioners' court and request that they fix his salary at the amount allowed by law, on account of his work being heavier by reason of having to handle a good roads fund."

The Court of Civil Appeals held that the order of 1909 attempting to fix the salary of the treasurer was void, but that the action of Greer in accepting the salary and settling with his successor in office by turning over the balance in his hands as treasurer without retaining the unpaid balance of his commissions amounted to a waiver of his right thereto and precluded his recovery. The correctness of this holding is the main ground of controversy in the case.

It is urged by counsel for Hunt county that the order of the commissioners' court is valid; and we are requested to so hold. This question, however, is settled in Montgomery County v. Talley (Tex. Civ. App.) 169 S. W. 1141, Smith v. Wise County (Tex. Civ. App.) 187 S. W. 705, and Wood v. Leath (Tex. Civ. App.) 204 S. W. 454, in each of which cases the Supreme Court denied a writ of error. In the first two of these cases it is held that R. S. art. 3873, while conferring upon the commissioners' court the power to reduce below the $2,000 maximum provided in article 3875, the rate or percentage which the treasurer shall be paid as commissions, does not authorize the substitution of a fixed amount as salary in lieu of commissions contingent upon the amount of receipts and disbursements; and any attempt to fix a definite salary in lieu of commissions is void.

The Leath Case holds that the commissioners' court has the power to reduce below the statutory limit of $2,000 the maximum amount which the treasurer may be paid as commissions, so long as the compensation of the treasurer is not changed from a commission basis.

The controlling distinction between the order in the Leath Case, on the one hand, and those in the Talley and Smith Cases, on the other, is that in the former the commissioners' court did not attempt to change the commission basis of the treasurer's compensation, but, in addition to reducing below the statutory maximum the percentage of his commissions, merely reduced the maximum of his yearly compensation under the commission basis to $1,600; whereas in the Talley and Smith Cases the commissioners' court attempted to substitute a fixed annual salary in lieu of the commissions which the treasurer would otherwise receive. It was held in all of these cases that this could not be done.

[1] There is no question but that the order in the present case was void under this holding. There was no effort to limit the maximum amount of commissions which the treasurer could earn; but in lieu thereof a definite fixed salary of $1,200 per annum was substituted. This salary was payable, under the order, whether or not the commissions amounted to as much as the salary. We agree with counsel for defendant in error that merely calling the compensation a salary or calling it commissions is not necessarily controlling. If the commissioners' court had ordered that the treasurer should receive "a salary" of $1,200 per annum with the proviso that, if his lawful commissions should amount to less than the salary, he should not receive in excess of his lawful commissions, this in fact would have been fixing a maximum which the treasurer could earn as commissions. On the other hand, had the commissioners' court ordered that the treasurer should receive the definite sum of $1,200 per annum "as commissions," regardless of the amount of money passing through his hands upon which he would by statute be entitled to commissions, we think the effect of this order would be to fix a salary basis of compensation, and the order would be void, regardless of the fact that it denominated the compensation as commissions. The controlling element in determining whether the amount to be received is upon a commission or salary basis is whether that amount, by whatever name it may be called, is absolute and fixed regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commissions.

The holding of the Court of Civil Appeals denying recovery to plaintiff is based upon the general doctrine denying recovery for money voluntarily paid with a full knowledge of all the facts and without any fraud, duress, or extortion, although no obligation to make such payment existed. The authorities cited in support of this holding are Kinsey v. Messerly, 198 Mo. 351, 95 S. W. 913; U. S. v. Wilson, 168 U. S. 273, 18 Sup. Ct. 85, 42 L. Ed. 464; Hardaway v. Railway, 90 S. C. 475, 73 S. E. 1020, Ann. Cas. 1913D, 266; 30 Cyc. 1290. We have examined these

authorities and have no doubt but that they support the general proposition asserted.

However, the facts in Smith v. Wise County are so nearly identical with those of the present case that we regard the two cases as without distinguishing feature, and the holding in the Smith Case as controlling here. In that case it was urged that the treasurer had estopped himself from claiming his commissions by virtue of his having been elected after the order fixing the salary was made, and by thereafter acquiescing in the order and regularly accepting the salary in lieu of his commissions. There can be little doubt but that any agreement, express or implied, attempting in advance to change the basis of the treasurer's compensation from that of commissions to that of salary, is utterly void, and therefore not binding upon the treasurer. This was the holding in both the Talley and Smith Cases.

Upon the other contention—the loss of the treasurer's rights by virtue of his having acquiesced in the orders and accepted the salary in lieu of his commission—the Court of Civil Appeals say:

"We think the holding in the Montgomery v. Talley Case is conclusive. If, as it is held, the treasurer would not be estopped from claiming the compensation allowed by statute because he had accepted the office, knowing that the commissioners' court had attempted to fix a different basis of compensation, we cannot see how he would be estopped by reason of his continuance in office and his acceptance of the compensation allowed, and his alleged tacit acquiescence in the construction of an order which did not meet the requirements of the law."

We do not think that the holding that the treasurer would not be bound by his acceptance of the compensation allowed or by his acquiescence in this method of compensation follows as a necessary conclusion from the holding that his acceptance of the office with knowledge that the commissioners' court had entered a void order was not binding upon him. The latter holding is clearly correct upon the ground that the treasurer would not be bound by any agreement, express or implied, that he would in the future accept an illegal in lieu of a legal method of fixing his compensation; whereas the former holding must be rested upon the want of binding effect of the consummated transaction of actually receiving and accepting the salary in lieu of commissions, as an implied waiver of any balance to which the law might entitle him. However, we think the holding in the above quotation from the Smith Case is conclusive of the question under discussion in the present case. Whether or not the Supreme Court in refusing a writ of error approved the method of reasoning by which the Court of Civil Appeals arrived at the result of its holding, nevertheless we think the refusal of the writ necessarily approved that result, and we therefore think the Smith Case forecloses the question in the present case.

It is urged that in the opinion in the Smith Case it was held that the treasurer was not estopped from claiming his full commissions by his acts of acquiescence and acceptance of salary under the void order, and that this holding is not inconsistent with the holding of the Court of Civil Appeals in the present case to the effect that the same acts, although not sufficient as an estoppel, do in law constitute a waiver. We are not unmindful of the elementary legal distinction between estoppel and waiver and of the additional elements in the former which are not prerequisites to the latter. However, we do not think the holding of the Court of Civil Appeals in the Smith Case should be limited in its application to the legal terms used in arriving at the conclusion. The facts in the case were what the court was passing upon; and if in the opinion of that court or of the Supreme Court the facts as stated in the opinion would constitute a good defense to the action of the treasurer for his commissions, under the theory either of estoppel or of waiver, we think the defense would have been allowed.

[2] The county officials clearly could not waive the county's right to assert the invalidity of the order by paying from the county funds the salary therein provided, should that amount exceed the lawful commissions of the treasurer. The latter, in accepting such amount, if in excess of his lawful fees, could not receive any benefit under the void order. He would still be bound to reimburse the county for any excess over his lawful fees, and could not defeat their recovery. Under these circumstances the acceptance of less than he was entitled to ought not as a matter of law to preclude him from afterwards demanding the balance to which he was legally entitled, for the relinquishment of which the county paid, and he received no consideration whatever. The county owed him absolutely a fixed and definite amount, to which there was no defense, and concerning which there was no legal controversy. We think the principle of law applies here that a debt fixed in amount and absolutely payable cannot be discharged by payment by the debtor and acceptance by the creditor of a less amount, and that the payment and acceptance of a less amount furnishes no consideration whatever for the relinquishment of the balance owing. While this doctrine has been criticized by some text-writers, it is now so firmly embedded in our jurisprudence as to be elementary and is the established law of this state. Ins. Co. v. Teague (Tex. Com. App.) 239 S. W. 604. We see no reason why this doctrine should not apply to the dealings between a county and its treasurer.

[3] Nor do we think that the fact that the

treasurer turned over the balance in his hands to his successor without retaining his commissions materially alters the situation of the parties. R. S. art. 2444, provides that when the commissioners' court has designated a county depository and approved its bond:

"It shall be the duty of the county treasurer of said county, immediately upon the making of such order, to transfer to said depository all the funds belonging to said county, and immediately upon the receipt of any money thereafter to deposit the same with said depository *to the credit of said county.*" (Italics ours.)

A failure to make such deposits renders the treasurer liable to the depository for 10 per cent. of the amount so withheld.

When this statute is complied with, county funds are carried on the books of the depository in the name of the county, and the treasurer has no interest in these funds further than that he has authority, by virtue of his official duties, to check on the account to discharge county warrants drawn by the proper authorities and presented to him for payment. R. S. art. 2449. This authority necessarily ceases, ipso facto, upon the election and qualification of his successor. No change is required or made in the account, as it remains in the name of the county. The treasurer, upon surrendering his office, is therefore not required to pay over or deliver to his successor any county funds if he has complied with the law and deposited all moneys received to the account of the county. From the express language of article 2444 it would seem to be the duty of the treasurer to deposit to the credit of the county all sums collected by him, which would include his commissions. We think the intention of the depository statutes was to require this to be done and to require the payment of the treasurer's commissions upon warrants regularly issued as in the case of other claims against the county. It may be noted in this regard that article 3888, which appears to be the only statutory provision authorizing county officials to retain their fees from funds collected by them, expressly limits that privilege to the officers named in article 3881, which does not include the treasurer. There is therefore no express authority for the treasurer's retaining his fees, and no express authority for his drawing on the depository to pay them without a properly drawn warrant. We are cited, in this connection, to the recent case of Harris County v. Charlton, 111 Tex. 588, 243 S. W. 460, in which the Supreme Court held that the county could not recover the lawful fees due the treasurer who had retained those fees out of funds collected by him. The question in that case was whether the treasurer was entitled to the fees which he had retained, and not whether he had followed the statute in depositing them to the county's credit and then making claim for them. But regardless of whether, under these statutes, the treasurer was required to deposit his fees with the depository and could only draw them out upon legally issued warrant, we think his action or nonaction in these regards did not amount to a waiver of his right to afterwards claim the balance due him.

It is also urged that plaintiff in error has not shown a right to bring his suit because it does not appear from the statement of facts that his claim was audited by the county auditor. In support of this holding the decision in Anderson v. Ashe, 99 Tex. 447, 90 S. W. 872, is cited. That was a suit for mandamus to compel the commissioners' court to approve a claim which the auditor had disallowed. No recovery was sought on the account itself. Mandamus was denied upon the holding that the commissioners' court had no power to allow the claim until it had been approved by the auditor. We quote from the opinion:

"It is claimed that the effect of the act of 1905 was to prevent the commissioners' court from acting upon relator's claim, and, since he cannot sue unless his claim be rejected by the commissioners' court, he is denied any remedy. If that were the effect of the law of 1905, we would necessarily hold that part of the act to be void, because the Legislature could not take away from a party the right to pursue his remedy in the courts, unless another remedy be provided. We conclude that the rejection by the auditor put it out of the power of the commissioners' court to act upon the claim, and amounted to a rejection by that court, bringing it within the terms of article 790 [1372] of the Revised Statutes. Under this view of the statutes, the plaintiff in this case had the right to sue the county of Harris to establish his claim against it. This construction preserves the rights of persons having claims against such counties, and enforces the legislative intent."

[4] In the case at bar plaintiff pleaded that he made out and presented his claim to the commissioners' court, who failed and refused to audit and allow it. The evidence shows that before he went out of office he presented his account to the commissioners' court for $3,300, and that court refused to allow it. Whether it was audited does not appear. R. S. art. 1366, provides that no claim against a county can be sued upon unless it shall have first been presented to the county commissioners' court for allowance, and such court shall have neglected and refused to audit and allow the same or any part thereof. The statute does not make an audit of a claim a prerequisite to filing suit. The only requirement is that the claim be presented to the commissioners' court, and that the court neglect or refuse to audit and allow it. The duty of having the account audited is thus placed upon the commission-

ers' court, and not upon the claimant, and disallowance of the claim by that court clearly gives the right to bring suit.

We therefore conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.