

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

March 25, 1949.

Hon. Joe J. Newman
County Attorney
Trinity County
Groveton, Texas

Opinion No. V-792.

Re: The maximum compensation of
County Attorney, County Clerk,
County Tax Assessor-Collector,
and County Treasurer and ques-
tions relating to the duties
of County Treasurer.

Dear Sir:

You have requested an opinion on several ques-
tions, the first two of which are:

"1. What is the maximum compensation
that the County Attorney, County Clerk, and
County Tax Collector-Assessor may retain as
fees of office in Trinity County? Each of
said officers were allowed to retain the sum
of Three Thousand Dollars in 1944.

"2. What is the maximum amount of fees
that the County Treasurer may retain in Trin-
ity County?"

Trinity County has a population, according to
the 1940 Federal Census, of 13,075 inhabitants. We are
informed by the Comptroller that the Commissioners' Court
has placed all County and precinct officers (with the
exception of the Sheriff and Constables, who are on a
salary basis by virtue of Article XVI, Section 61 of the
Texas Constitution) on a fee basis. Therefore, the com-
pensation of the County Attorney, County Clerk, and Coun-
ty Tax Assessor-Collector is governed by the provisions
of Article 3883 and 3891. It was held in Attorney Gen-
eral's Opinion No. V-13 that the maximum compensation of
such officers in counties of less than 25,000 inhabitants
was $3,750.

The compensation of the County Treasurer of
Trinity County is governed by the provisions of Article

Hon. Joe J. Newman, page 2 (V-792)

3943, and your second question is answered by Attorney General's Opinion No. V-231, a copy of which is enclosed. This Opinion, which construed H. B. 258, Acts of the 50th Legislature, 1947, amending Article 3943, held that upon the effective date of that bill, the Commissioners' Courts of those Counties governed by the Act were authorized to increase the maximum amount of lawful commission the County Treasurer may retain in an additional amount not to exceed 25 per cent of the maximum sum allowed under the law for the fiscal year of 1944. Since the maximum compensation the County Treasurer of Trinity County could receive in 1944 under the provisions of Article 3943 was $2,000, his maximum compensation now is $2,500 ($2,000 plus $500).

Your third question reads as follows:

"3. How are the above named officers paid, whether by retention of fees or by voucher duly approved by the order of the Commissioners Court?"

It was held in Attorney General's Opinion No. 0-6360, a copy of which is enclosed:

"From the above we are forced to the conclusion that all the tax money collected by the tax collector and assessor for the county 'after reserving his commission for collecting the same', should be paid by the assessor and collector into the county treasury. After this money reaches the county treasury the county tax assessor and collector is paid for the assessment of the taxes out of the first tax money collected, in accordance with the statute which formerly applied only to the tax assessor, and which is set out supra (Article 3938). The tax collector is paid for his services in collecting the tax money collected by him in accordance with the statute which, prior to the consolidation of the two tax offices, applied only to the tax collector (Article 7261).

"Our answer to your question, therefore, is that the tax collector and assessor shall

pay into the county treasury all the county tax money collected by him except such as he reserves as his commission for the <u>collecting</u> of same, on the total amount collected, and that he has no authority of law to reserve any payment out of the tax money collected by him which would go to himself by way of compensation for his <u>assessment</u> of taxes."

Therefore the Assessor-Collector may retain his commissions for the collection of county taxes and deposit the remainder of the tax money in the treasury, but he cannot retain compensation due him for assessing taxes.

Articles 2549, 3883 and 3890 provide:

Article 2549:

"As soon as said bond be given and approved by the Commissioners Court, and the Comptroller, an order shall be made and entered upon the minutes of said Court designating such banking corporation, association or individual banker, as a depository for the funds of said county until sixty (60) days after the time fixed for the next selection of a depository; and thereupon, it shall be the duty of the county treasurer of said county immediately upon the making of such order, to transfer to said depository all the funds belonging to said county, as well as all funds belonging to any district or other municipal subdivision thereof not selecting its own depository, and immediately upon receipt of any money thereafter, to deposit the same with said depository to the credit of said county, district and municipalities. . . ."

Article 3883:

"Except as otherwise provided in this Act, the annual fees that <u>may be retained</u> by precinct, county and district officers mentioned in this Article shall be as follows: . . ."

Article 3890:

"The amounts allowed to each officer mentioned in Article 3883 may be retained out of the fees collected by him under existing laws; but in no case shall the State or county be responsible for the payment of any sum when the fees collected by any officer are less than the maximum compensation allowed by this chapter, nor be responsible for the pay of any deputy or assistant."

In construing the above statutes the Commission of Appeals in Greer v. Hunt County, 249 S. W. 831, stated:

"When this statute (now Art. 2549) is complied with, county funds are carried on the books of the depository in the name of the county, and the treasurer has no interest in these funds further than that he has authority, by virtue of his official duties, to check on the account to discharge county warrants drawn by the proper authorities and presented to him for payment, R.S. art. 2449 (now Art. 2554). This authority necessarily ceases, ipso facto, upon the election and qualification of his successor. No change is required or made in the account, as it remains in the name of the county. The treasurer upon surrendering his office, is therefore not required to pay over or deliver to his successor any county funds if he has complied with the law and deposited all moneys received to the account of the county. From the express language of Article 2444 (now Art. 2549) it would seem to be the duty of the treasurer to deposit to the credit of the county <u>all sums collected by him, which would include his commissions.</u> We think the intention of the depository statutes was to require this to be done and to require the payment of the treasurer's commissions upon warrants regularly issued as in the case of other claims against the county. It may be noted in this regard that article 3888 (now Art. 3890), which appears

to be the only statutory provision authoriz-
ing county officials to retain their fees
from funds collected by them, expressly lim-
its that privilege to the officers named in
article 3881 (now Art. 3883), which does not
include the treasurer. There is therefore
no express authority for his drawing on the
depository to pay them without a properly
drawn warrant. . . ."

In view of the foregoing the County Treasurer
must deposit all sums collected by him for the County
in the County Depository. He cannot withhold his com-
missions, but must be paid said commissions by warrants
regularly issued. The County Attorney and County Clerk
are authorized under Articles 3883, 3890 and 3891, V.C.
S., to retain their fees from moneys collected by them.

We quote your fifth and sixth questions:

"5. What authority does the County
Treasurer have in issuing checks for cash
without showing authority or purpose for
the same?

"6. Does the County depository have
authority to honor checks drawn by the
County Treasurer payable to cash and not
showing by what authority or for what pur-
pose so drawn?"

Article 1713 provides:

"The county treasurer shall not pay any
money out of the county treasury except in
pursuance of a certificate or warrant from
some officer authorized by law to issue the
same; and, if such treasurer shall have any
doubt of the legality or propriety of any
order, decree, certificate or warrant present-
ed to him for payment, he shall not pay the
same, but shall make report thereof to the
commissioners court for their consideration
and direction."

It was held in the case of Gussett v. Nueces
County, 235 S. W. 857:

".. . payments by a county treasurer
for the benefit and purposes of the county
in pursuance of his designation and capaci-
ty as purchasing agent, made under order
of the commissioners' court or upon the re-
quisition of the county judge or commission-
ers, instead of in pursuance of certifi-
cates or warrants, are proper credits in fa-
vor of such treasurer, if thereafter, in due
course, they be approved and ratified by the
commissioners' court.  Or, in other words,
in the case at bar, it was within <u>the power
of the commissioners' court to direct the
payments since they were for a lawful pur-
pose; and, that being true, we think it
could ratify the manner in which they were
made.</u>  That is to say, under facts like
these, the court itself could correct any
irregularities in the manner of payment by
approving the expenditure later, and ratify-
ing the treasurer's action."

It was held in Attorney General's Opinion No.
0-2807:

".. . unless the county treasurer and
commissioners' court or the county judge have
acted in the manner as above stated, the
county treasurer cannot lawfully pay money
out of the county treasury either for com-
missions due himself or for principal and in-
terest payments on bonds, without first ob-
taining warrants or certificates as required
by Article 1713, supra."

In view of the foregoing it is our opinion
that the County Treasurer does not have authority to is-
sue checks for any purpose except in pursuance of a cer-
tificate or warrant from some officer authorized by law
to issue the same as required under Article 1713.  This
does not mean, however, that such authority must appear
on the face of the check.  If, however, the County De-
pository has any doubt as to the authority of the Coun-
ty Treasurer issuing such check, the County Depository
has the right and it is its duty to check to see whether

the check is drawn in pursuance of a certificate or warrant from some officer authorized by law to issue the same before honoring said check.

Your seventh, eighth, ninth, and tenth questions are as follows:

"7. What is the meaning of Article 2554 relative to the depository making a monthly report to the Commissioners Court advising such court as to the daily balances for the preceding quarter of the various county funds?

"8. Should the depository send its monthly statements with its cancelled checks to the County Treasurer or to the Commissioners Court for the Commissioners inspection under article 2554?

"9. Under the existing statutes does the County Treasurer have any authority to refuse to submit cancelled checks to the Commissioners Court for their inspection?

"10. In the event he should refuse to submit such checks for their inspection by the Commissioners Court what action can be taken by the Commissioners Court?"

Article 2554, V. C. S., provides:

". . . It shall be the duty of such depository to make a detailed monthly statement to the Commissioners Court at each regular term of said Court showing the daily balances to the credit of each of the funds on deposit.
. . ."

We quote the following from Attorney General's Opinion No. 0-6459:

"Article 2554 of Vernon's Annotated Civil Statutes requires the County Depository to make to the Commissioners' Court monthly statements at each regular term of said court showing the daily balances to the

credit of each of the funds on deposit. Accordingly, it is our opinion, in answer to your second question, that the Commissioners' Court is authorized to consider the bank's statements issued by the Depository Bank as evidence upon which to base its action in approving the County Treasurer's and County Auditor's reports as to the cash on hand, . . .

In view of the foregoing it is our opinion that it is the mandatory duty of the County Depository to make to the Commissioners' Court monthly statements at each regular term of said Court showing the daily balances to the credit of each of the funds on deposit. There is no provision requiring that the cancelled checks of the County accompany said statements. Therefore, the County Depository may send such cancelled checks to the County Treasurer to aid him in his report to the Commissioners' Court as required by Article 1711, V. C. S., which provides:

"He shall render a detailed report at every regular term of the commissioners court of his county of all the moneys received and disbursed by him, of all debts due to and from his county, and of all other proceedings in his office, and shall exhibit to said court at every such term all his books and accounts for their inspection and all vouchers relating to the same, to be audited and allowed. . . ."

It is our opinion that when the County Depository delivers the cancelled checks to the County Treasurer they become a part of the County Treasurer's record and subject to inspection by the Commissioners' Court.

Since the County Treasurer is required to exhibit his records to inspection by the Commissioners' Court, it is presumed that such officer will not refuse to perform a statutory duty, and we therefore decline to answer your tenth question at this time.

## SUMMARY

The maximum compensation of the County Attorney, County Clerk, and County Tax Assessor-Collector in Counties under 25,000 inhabitants, where the County officials, with the exception of Sheriffs and Constables, are compensated on a fee basis, is $3,750. Articles 3883 and 3891; A. G. Opinion No. V-13. The maximum compensation of the County Treasurer in said counties is $2,500. Article 3943; A. G. Opinion V-231. The County Treasurer cannot withhold his commissions, but must be paid by warrants regularly issued. Greer v. Hunt County, (Comm. App.) 249 S.W. 831. The Tax Assessor-Collector may retain his commission for the collection of County taxes, but he cannot retain compensation due him for assessing taxes. A. G. Opinion No. 0-6360. The County Clerk and County Attorney are authorized to retain their fees and money collected by them. Articles 3883, 3890, 3891. It is the mandatory duty of the County Depository to make monthly statements to the Commissioners' Court at each regular term of said Court, showing the daily balances to the credit of each of the funds on deposit. It may, however, send the cancelled checks to the County Treasurer to aid him in his report to the Commissioners' Court, and the County Treasurer must submit said cancelled checks to the Commissioners' Court's inspection. Articles 2554, 1711, V.C.S.; A. G. Opinion No. 0-6459.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

APPROVED

*Joe R. Greenhill*

FIRST ASSISTANT
ATTORNEY GENERAL

By *John Reeves*

John Reeves
Assistant

JR:bh