## WANN v. KELLY.

### *(Circuit Court, D. Minnesota.* February 11, 1881.)

**1. ILLEGAL CONTRACT—LIABILITY TO ACCOUNT FOR PROCEEDS.**

A joint owner is liable to account to his associates for money paid under an illegal but completed contract.

**2. SAME—ACTION AT LAW.**

When, in a single adventure, which is closed, a person, jointly interested therein with others, appropriates the proceeds to his own use, he becomes a debtor to his associates, and an action at law gives adequate relief.—[ED.

*Gilman & Clough,* for plaintiff.

*W. P. Warner,* for defendant.

NELSON, D. J. This action is brought by the plaintiff, Wann, against defendant, Kelly, to recover money paid to the latter for the plaintiff's use. The facts developed are these : The plaintiff and defendant and E. B. Gibbs agreed to engage in a speculation by the sale and purchase, or purchase and sale,—it is immaterial which,—of 300 shares of Northern Pacific Railroad stock on their joint account, each to be interested to the extent of 100 shares. The transaction was determined upon and agreed to by the parties in the belief that the stock would depreciate in the market, and by "selling short" they would be able in the future to purchase so as to make a profit upon the whole transaction, called by stockjobbers "the deal."

The plaintiff alleges it was agreed that Kelly should manage the speculation, and through his broker in New York sell 300 shares Northern Pacific Railroad stock, which was done November 8 and 11, 1879, and afterwards, when a depreciation in the price of the stock reached two points, or two dollars per share, he should order the broker to purchase 300 shares of the stock, and thus close the venture, and pay over to each his proportion of the profits.

The evidence shows very clearly that the arrangement contemplated, in fact, no contract of actual sale or purchase; but, on the contrary, the intention and design was that, as between themselves and the party with whom they dealt, all differences in the price of the stock, at the time of the supposed contracts, should be paid by one party to the other as performance and satisfaction thereof. There were no actual bargains for the sale of the actual stock, but mere bets or wagers on the future price,—gambling transactions on the chance of future rise or fall. Kelly claims the "deal" closed November 19, 1879, when there was a depreciation of two or more points, showing a profit of $647, and that he has paid the plaintiff his portion, one-third of that amount. Wann admits the receipt of $215.66, but claims that the "deal" was

not closed until November 22, 1879, when Kelly actually realized and received a profit of $2,000, and that he is entitled to one-third of this amount, which Kelly received for him. The broker in New York did not close up the speculation until November 22d, as appears by his statement rendered Kelly, for whom he acted, and the only person known to him in the business, at which time the profit realized was the sum before stated. Kelly further claims that he was authorized by his arrangement, which was agreed to by Gibbs and plaintiff, to carry the "deal" on his own account, if he desired to, after a decline of two points, by paying each of them the profits resulting from such decline, and could close them out in that way. This is not the arrangement disclosed by the evidence. It was not possible to close up the transaction with Wann and Gibbs, unless by their consent, until he notified the New York broker to close the "deal," and that he would take the profit which resulted from the speculation at the time, whether the decline was two or more points. As the broker did not close the "deal" until November 22, 1879, if the plaintiff is entitled to recover anything, it will be upon the basis of the profit paid Kelly then. The testimony of Kelly shows that the three parties were interested to the extent of one-third each in the venture, and the statement rendered Wann purports to be based upon the close of the "deal" by the New York broker, November 19th. Kelly thought he could carry the speculation for his own benefit, and at his own risk, after a profit of two points was reached, but the arrangement, as testified to by all the parties to it, would not permit him to do so.

It is urged by Kelly that the business in which the parties engaged was contrary to public policy and illegal, and therefore he can retain all the profit which resulted therefrom without recognizing his associates jointly interested, and that a court will not enforce the plaintiff's claim. Such is not the law. The agreement between the parties related to a single transaction, and when the business closed, and Kelly received the profits, he was in duty bound to pay over to the plaintiff his part of it.

If the speculation was contrary to public policy and illegal, it had been closed, wound up, and the illegal object of it had been accomplished.

It is settled by the United States supreme court (*McBlair* v. *Gibbes*, 17 How. 237; *Brooks* v. *Martin*, 2 Wall. 70, and authorities cited) that when the illegal contract is completed, and money has been received by a joint owner by force of the illegal contract, he will not be permitted to retain it, and cannot protect himself by setting up the illegality of the transaction in which it was paid him, but must account to his associates.

It is also urged by the defendant that plaintiff, if entitled to a share of the profit, can only enforce his claim in equity. I think an action at law gives adequate relief. The parties were engaged in a single venture, and the defendant, having appropriated the proceeds to his own use, made himself a debtor to the plaintiff. Judgment will be entered in favor of the plaintiff for $451, and interest from November 22, 1879. The amount being less than $500, costs must be paid by the plaintiff.