A. H. IDEL, W. F. STUKENBROEKER, WILLIAM AUFDERHEIDE, GEORGE LEFMANN, FERD PLETZ and ED. KRIETE, Directors and Trustees for Owensville BOOSTER CLUB of Owensville, Appellants, v. HAMILTON-BROWN SHOE COMPANY and J. H. HANSEN.—121 S. W. (2d) 817.

Division One, November 19, 1938.

374

*Harry Clymer, Jos. T. Tate, James Booth* and *Jesse H. Schaper* for appellants.

*Luke E. Hart, W. T. O. Hart* and *Phil M. Donnelly* for respondent.

376

BRADLEY, C.—This cause has been reassigned. The petition is in two counts. In the first count plaintiffs prayed judgment for $4990.22, and in the second for $34,900. The cause was filed in Gasconade County, but went on change of venue to Crawford County, where trial was had before the court without a jury. The finding was for defendants and plaintiffs appealed.

Hereinafter the term defendant has reference to Hamilton Brown Shoe Company. Plaintiffs are the trustees and directors of the Owensville Booster Club, a voluntary, unincorporated association, composed of citizens and business men of Owensville and vicinity, and organized for the purpose of promoting trade, commerce, and the general welfare of the people of Owensville. Through the activities of the club defendant established in Owensville (under a contract with the club), in September, 1920, a "fitting room as a department of a shoe factory." A parcel of real estate, with a building thereon, was conveyed (donated) to defendant, in which building the fitting room was located. The value of this piece of real estate was $1500. The remainder sought in the first count is made up of money raised by the club and donated to defendant.

March 23, 1922, the club entered into a second contract with defendant and there was conveyed (donated) to defendant a three-acre tract of land of the value of $2400. Upon this tract defendant was to and did construct and operate a complete shoe factory. In addition to the three-acre tract there was, under the second contract, $32,500 in money donated to defendant. Defendant constructed a shoe factory on the three-acre tract and operated the same until some time in February, 1931, when it ceased to operate and moved most of the machinery from the factory building.

The consideration for the grants of real estate and money to defendant was the construction and operation of the shoe factory under the contract. Plaintiffs proceed on the theory that defendant could not abandon the operation of the shoe factory without liability for the money and property granted as the consideration to defendant for establishing the factory in Owensville. Plaintiffs' cause is based on Sections 4601-4606, Revised Statutes 1929 (Mo. Stat. Ann., secs. 4601-4606, pp. 2043-2045).

Sections 4601 and 4602 are as follows: Section 4601: "It shall be unlawful for any corporation doing business in this state at any time, or for the officers, agents or others having control of the corporation

or of the business or property of such corporation, to move, abandon, or discontinue, in any way, to any material extent, any factory, workshop, office, agency or other establishment, or the work or business carried on therein, from or in any city, town or other place within this state, without first repaying and restoring any and all money, bonds, lands and other property, which have been, or shall hereafter be, given or granted as a consideration or inducement for the location or construction, operation, enlargement or maintenance at any such city, town or place, of such factory, workshop, office, agency or establishment, or of the work or business carried on thereat; and such repayment or restoration must include and be accompanied by the payment of lawful interest on such money, bonds, lands and other property, or upon the proceeds or reasonable value thereof, for the full period that shall have elapsed between the date of the original gift or grant and such final repayment and restoration."

Section 4602: "The provisions and penalties of sections 4601 to 4606, inclusive, shall apply in all cases where the gift or grant was or shall be made by any city, town, company, person or persons, and they shall apply in all cases where the gift, grant, consideration or inducement, was made or paid to the corporation owning or operating such factory, workshop, office, agency or establishment, and shall apply as well in all cases where such gift, grant, consideration or inducement, was made or paid to any officer, agent, receiver or trustee of such corporation, or at the time in control of the property or business of the corporation; and the provisions and penalties of said sections shall apply also if the corporation has succeeded to the rights, franchises, property or business of any corporation, to which, or to the officers, agents, receivers or trustees of which corporation, or of its property, any such gift, grant, consideration or inducement, was or shall have been made or paid."

Section 4603 makes the violation of any of the sections mentioned a misdemeanor. Section 4604 prescribes the penalty for any officer, agent, etc., of such offending corporation as not more than one year's imprisonment, or a fine not to exceed $1000, or by both fine and imprisonment. The section fixes the penalty as to the corporation at "a fine of one thousand dollars for each day that shall elapse between such act of removal, abandonment or discontinuation, and the repayment and restoration required by said sections; and any corporation found guilty of violating any of the provisions of said sections shall also forfeit all rights or franchises derived from or enjoyed within this state, and shall be enjoined from transacting any business within the state."

Sections 4605 and 4606 are as follows: Section 4605: "The repayments and restorations required by sections 4601 to 4606, inclusive, shall be made to the city, town, company, person or persons, by which

or whom the gift, grant, consideration or inducement, was made or paid, or to their successors, assigns or legal representatives.''

. Section 4606: ''The forfeitures and injunctions provided for in sections 4601 to 4605, inclusive, may be decreed and enforced by any circuit court of any county in which any such corporation may do business, in a suit to be instituted for the purpose, in the name of the State of Missouri, by the prosecuting attorney of the county in which such suit is prosecuted.''

Defendant answered by general denial, and pleaded the two contracts of September, 1920, and March 23, 1922, and alleged, among other defenses, that the statute relied upon by plaintiffs is unconstitutional and void, because in conflict with Section 53, Article 4 (prohibiting special laws-class legislation), Constitution of Missouri; and in conflict with Section 1 of the Fourteenth Amendment, Constitution of the United States, which, among other things, provides that ''no State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the law.'' It is alleged also that plaintiffs are estopped to invoke the statute relied on, because of the execution of the two contracts and the mutual procedure thereunder.

Among other provisions, the contract of September, 1920, contained this: ''The parties of the first part (the club) shall and will at such time that the party of the second part pays out to employees of said factory who are employed at and in said factory at Owensville the sum of $75,000 in wages, convey to the party of the second part its successors and assigns by warranty deed in fee simple free from all liens and incumbrances,'' the fitting room lot and building.

The contract of March 23, 1922, seems to have superceded, or was supplemental to the first contract. Anyway it appears that the deed provided for in the first contract was executed November 14, 1922, without regard to the amount then paid out in wages.

The pertinent parts of the second contract are: (2) ''The purpose of this agreement is to induce said shoe company to locate one of its manufacturing plants in the City of Owensville, and the said parties of the first part, to that end, have agreed to cause to be conveyed to said shoe company by warranty deed in fee simple, absolute and free from all liens and incumbrances of every kind and character, a parcel of ground in the City of Owensville and described as follows: (The 3-acre tract is here described.) . . . The above described property shall serve as a site on which to erect and build a manufacturing plant to be operated in the said city, and the parties of the first part agree to pay said shoe company a bonus of $32,500, to induce it to build such a plant and manufacture its products therein at said place, payments to be made to said shoe company in the following installments: $2500 at once; $8000, when foundation of building is com-

pleted; $8000, on completion of building to second floor; $7000, on completion of second floor; $7000 on completion of the building.

"The second party agrees that it shall and will as speedily as possible after said parcel of ground, set forth in paragraph two, shall have been conveyed to it, proceed to erect on said lot of ground, with all reasonable speed and diligence, a three story brick building of joist construction, approximately 52 x 200 feet.

"The second party agrees to obligate itself to compensate the first parties for the payment of said bonus of $32,500 by paying out in wages to employees in the city of Owensville, within a period not to exceed ten years after July 1, 1922, the amount of $750,000. It is understood that the second party's officers who do not reside in the city of Owensville shall not be included in determining the aggregate of said expenditures.

"It is further agreed that in the event the second party shall fail to expend the amount aforesaid within said period it shall and will refund and pay to the first parties such proportion of said $32,500, as the sum not so expended by it, for wages as aforesaid, bears to $750,000. For example, if the second party shall expend in wages only sixty per cent of said amount of $750,000, the second party will then have to refund and pay to the first parties forty per cent of said amount of $32,500 paid by the first parties as bonus.

"The expenditure of said amount in wages and otherwise as herein provided, or the expenditure of said wages in part, and payment of such refund in part, shall be a full and complete discharge and acquittance of the second party from all obligations under this contract."

At the close of the case plaintiffs asked the following declaration of law: "The Court sitting as a jury is instructed that the contracts set up in the answer of the defendant, Hamilton-Brown Shoe Company, and read in evidence in this case are against public policy, void and constitute no defense to this action." The declaration, the only one asked by either side, was refused.

It will be observed that the statute in question here applies only to corporations to which a bonus (commonly so called) has been given. State ex rel. Rolston, Prosecuting Attorney, v. Chicago, B. & Q. Railroad Co., 246 Mo. 512, 152 S. W. 28, was a proceeding under Sections 3223-3225, Revised Statutes 1909, to recover accumulated penalties for abandoning a depot (erected in consideration of a donation of land) without being authorized so to do by the Board of Railroad and Warehouse Commissioners. In that case the court said (246 Mo. l. c. 514): "It is to be observed that though a depot has been erected at a given place, a postoffice established and a village or town built there, the act is yet inapplicable unless there is present one further element, i. e., the depot must be one which has been erected in consideration of a donation of lands to the railway company."

In the present case the statute, by its terms, does not apply to corporations which have not received a bonus for the location of a factory, shop, etc. In State ex rel. v. C., B. & Q. Railroad Co., supra, the court, after using the language above quoted, further said:

"The constitutional prohibitions against class legislation and the denial of equal protection of the laws in no wise deprive the Legislature of all discretion in the matter of defining the classes to which its enactments shall apply, and it is only when the classification attempted is arbitrary, unreasonable and unjust that these constitutional provisions inhibit such legislative action. The Legislature's broad discretion with respect to the classifying of persons and objects for the purposes of legislation is not at all subject to revision by the courts, however unwisely it may seem to have been exercised in an occasional particular instance. When, however, it clearly and beyond a reasonable doubt appears that the legislative power has been transcended and that a particular act arbitrarily, unjustly and unreasonably marks particular persons or things as the objects of burdensome legislation and exempts therefrom others of the same natural class it is necessary to point out that fact and give to the constitutional provisions in question their intended effect. It is settled law that a classification for legislative purposes 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' "

It was held that the act in question was unconstitutional and void, because it applied only to railroads "which have erected depots in compliance with an agreement to erect them in consideration of donations, but exempts from its application all other roads despite the fact that the distinction observed is grounded on no reason of a public nature and bears no relation to the reason for the enactment of legislation relative to the removal of depots, i. e., the need of the public for depot facilities at the place affected."

Can it be said that the distinction made in the statute here involved, between corporations which have received no bonus and those which have, is grounded on reasons of a general public nature? We do not think so. It will be noted that Section 4602, above set out, makes the statute applicable, although only one person make the grant or gift.

State ex rel. v. C., B. & Q. Railroad Co., supra, has been cited with approval a number of times on the subject of class legislation and the denial of the equal protection of the law. Among these cases are Lige v. C., B. & Q. Railroad Co., 275 Mo. 249, l. c. 260, 204 S. W. 508; State ex rel. and to the use of Saline County v. Wilson et al., 288 Mo. 315, 232 S. W. 140; In re French, 315 Mo. 75, l. c. 82, 285 S. W. 513; State ex rel. Holloway v. Knight, 323 Mo. 1241, l. c. 1247, 21 S. W. (2d) 767; State ex rel. Wells v. Walker, 326 Mo. 1233,

l. c. 1249, 34 S. W. (2d) 124; State ex rel. Prosecuting Attorney to use of School Fund, Miss. County v. Cairo Bridge & Terminal Company, 340 Mo. 190, l. c. 198, 100 S. W. (2d) 441. These cases are on facts different from the facts of the present case, but the fundamental principles of construction, when measured by the Constitution, as stated in State ex rel. v. C., B. & Q. Railroad Co., supra, are repeated and approved.

We see no escape from the conclusion that the legislative act upon which plaintiffs rely is unconstitutional and void, because in conflict with subdivision 26, Section 53, Article 4, Constitution of Missouri, and in conflict with that part of Section 1 of the Fourteenth Amendment of the Constitution of the United States, providing that "no State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the law."

■ If the statute upon which plaintiffs rely were valid, still recovery under the facts, could not be had. There is nothing in the contracts that is *malum in se,* but they are contrary to a penal statute if the statute were valid.

The contract of March 23, 1922, which superceded or was supplemental to the first contract, obligated defendant to pay out $750,-000 in wages as in the contract provided, and "within a period not to exceed ten years after July 1, 1922." The record shows that within that period and in about eight and a half years from July 1, 1922, defendant paid out in wages at the Owensville factory the sum of $1,102,693.65, and that in addition to this, defendant paid out $156,000 in constructing and equipping the factory building. It will be observed, supra, that the contract provided that the payment in wages of $750,000 and within said ten-year period would "be a full and complete discharge" of defendant's obligations under the contract. It is conceded that these contracts have been fully performed by both sides.

■ "The general rule is that neither party to an (illegal) agreement that has been executed on both sides will be aided in recovering what has been parted with under the agreement." [12 Am. Jur., Contracts, sec. 213, p. 724.] Numerous cases from the Supreme Court of the United States and from many states are cited supporting the general rule as stated in American Jurisprudence. Among the cases cited is Ullman et al. v. St. Louis Fair Association, 167 Mo. 273, 66 S. W. 949. In the Ullman case the court quoted with approval from Skinner v. Henderson, 10 Mo. 205, as follows: "The rule in respect of money paid on illegal contracts appears in general to be, that money so advanced may be recovered in an action for money had and received, while the contract remains executory, because a violation of the law is thereby prevented; but if the contract be executed, it cannot be recovered back."

"In an executory, illegal and immoral contract the law allows for repentance, and money paid thereon may be recovered back; but, if the contract upon which the money is paid has been performed then the law will not aid the party who has expended money thereon to get it back." [Burgess v. Manchester Inv. Co. (Mo. App.), 186 S. W. 1144, 1. c. 1145, and cases there cited.]

We are clear that the statute upon which plaintiffs rely is unconstitutional and void, and that if it were not, still plaintiffs could not recover. The judgment should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.,* not sitting.