CLARENCE R. LEEPER, Appellant, v. HERMAN R. KURTH, REGINA E. KURTH and MARVIN W. LEEPER.—163 S. W. (2d) 1031.

Division One, July 1, 1942.

Rehearing Denied, July 28, 1942.

*A. F. Harvey* and *Wright & Ford* for appellant.

*Livengood & Weightman* for respondents.

940

 HYDE, C.—This is an action in equity to cancel a deed to land in Nodaway County. Counts in ejectment, quiet title and for conversion of crops were also stated. Defendants Kurths' answer stated that the deed was made to them by plaintiff to defraud his creditors, and asked affirmative relief of determination of title. Defendant Marvin W. Leeper's answer stated that there had been a settlement of all claims for rents and crops. The court found for defendants on all issues and plaintiff has appealed.

Plaintiff's father conveyed 450 acres of land to plaintiff's brother in 1900. This deed conveyed the land to "William F. Leeper during his natural life and at his death to his heirs but should he die without children, then to his full brothers or their heirs." After the death of William F. Leeper, in 1938, there was a controversy over the title to this land on the claim of defendant Marvin W. Leeper (adopted child of William F.) to the whole tract, in Leeper v. Leeper, 347 Mo. 442, 147 S. W. (2d) 660, decided in February, 1941. After the decision in that case (which held that title went to plaintiff and his two brothers) the whole tract was partitioned in kind, being divided in three parts. The part in controversy here (144 acres) was set off in April, 1941, "as the separate property of plaintiff and defendants (Kurths) subject to the adverse claims of each." This suit was commenced May 3, 1941. Defendant Marvin W. Leeper was then in possession under a lease from defendants. The court found that Count Three for damages and conversion of crops had been settled, and no point is made about this here.

Plaintiff and William F. Leeper were in partnership in farming and livestock business under the name of Leeper Brothers. Plaintiff owned 505 acres which had been conveyed to him by his father unconditionally. Leeper Brothers had jointly purchased a farm of 118 acres and another farm of 173 acres. They also purchased smaller tracts of 10 acres and 54 acres. They borrowed $38,500, through the Bartlett Trust Company at St. Joseph, which was a first mortgage on plaintiff's 505 acres and the 173-acre farm owned by both. They also borrowed $6000.00 from a local bank which was secured by a first mortgage on the 118 acres and by a chattel mortgage on livestock. They had some other indebtedness in smaller amounts. In 1932 they were in financial difficulties and sought to turn over the mortgaged property to the holders of the mortgage debts. These

creditors would not agree to take the property in settlement of the debts but preferred to take title by foreclosure. It was apparent that foreclosures would result in large deficiencies. Because of this situation plaintiff and William F. Leeper made deeds to the defendants Kurths, one deed conveying to them the 54 acres which was unincumbered, and the other conveyed the 450 acres in which William F. Leeper had a life estate. The wives of plaintiff and William F. Leeper were sisters and Mrs. Kurth was the niece of both. There is considerable conflict as to whether plaintiff or William F. Leeper took the initiative in this transaction. However, plaintiff's son drove Mrs. William F. Leeper to Lincoln, Nebraska, where the Kurths lived. While there, they saw a lawyer who later came to Maryville and got the description of the unmortgaged Leeper lands from the deed records. He returned to Lincoln, prepared the deeds there and sent them to H. S. Cook, a notary public at Maitland. Mr. Cook brought the deeds to plaintiff's home and all parties signed them there. Plaintiff's testimony was that the deed to the 54 acres was complete when he signed it but that the other deed was blank. He said that he was told that this would be filled in to describe the 10-acre tract and that it was in blank because "they had made a mistake in the description of the 10 acres but to sign it up in blank and they would fill it in." This was the warranty deed which purported to convey the entire title to the 450 acres in which William F. Leeper had a life estate. Defendants' testimony was that this deed was complete when plaintiff signed it.

The court in its decree made findings on the fact issues, as follows:

"That plaintiff's contention that the deed in controversy was signed in blank and that later the legal description of the real estate was filled in by some party unknown to plaintiff cannot be sustained; that plaintiff and all other parties who signed the deeds well knew what they were signing and the purpose thereof and that plaintiff himself admits that in the year 1936, five years before the institution of this suit, he discovered that the ten-acre tract mentioned in evidence, which he claims to have understood was to be inserted in the blank description, had not been inserted therein and upon this discovery, plaintiff took no steps to correct the mistake.

"That plaintiff arranged for the deeds to be executed and explained at the time of the execution of the deeds that one deed conveyed the interest to the real estate which he and his brother owned in fee simple and the other deed, the one in controversy, conveyed the real estate in which his brother had a life estate; that plaintiff well knew and understood the legal effect of his executing the two deeds and did it for the sole purpose of hindering, delaying and defrauding his creditors; that immediately after he had executed the deeds in question, he left the State of Missouri, and remained away in the State of

Florida for a long period of time for the specific purpose of preventing process being served upon him; that the creditors of the said plaintiff were deceived by said deeds and took no action to set the same aside and that plaintiff, by executing the deed in controversy, has fully accomplished his purpose of hindering, delaying and defrauding his creditors and does not now come into a court of equity with clean hands and is therefore not entitled to equitable relief.''

It was shown that the Kurths did deed back the 54-acre tract and that at plaintiff's request his interest was conveyed to his daughter, ''so the company or the bank could not grab it.'' William F. Leeper and his wife ''made out a deed to their half of the ten acres'' to plaintiff, when he asked them about ''deeding your half to me for what you owe me.'' Plaintiff said he never talked to the Kurths before the conveyances to them; that they made no representations to him ''about the deeds or anything;'' and that he ''had no agreement with them.'' Plaintiff's son went to see Kurth, after the decision of the Supreme Court in Leeper v. Leeper, in 1941, about the land in controversy, and asked him ''if he was ready to deed this back.'' This was after ''the fifty-four acres was already deeded back;'' and Kurth told him then ''he would not deed this back because he was keeping it for Mary,'' meaning Mrs. William F. Leeper. She (Mrs. William F. Leeper) testified at the trial indicating that she was the real beneficiary of the transaction, saying: ''Must I work all my life for the Leeper Brothers? I made the living; I bought our clothes and I paid the insurance company and I bought groceries. Must I be cast out and not get one thing; at my age of sixty-four years.'' The Kurths did not appear to testify at the trial. Thus the actual ultimately interested party defendant seems to be Mrs. William F. Leeper rather than the named defendants.

The evidence is amply sufficient to sustain the chancellor's findings on the disputed fact issues and we, therefore, accept and adopt them. Thus it appears that plaintiff is not entitled to relief in a court of equity. ''He does not come into a court of equity with clean hands. He is confronted with the related maxim that where the fault is mutual the law will leave the case as it finds it. ('*In pari delicto, potier est conditio,*' etc.) There are exceptions to those maxims, but none of them avail this plaintiff. The maxim that he who comes into equity must come with clean hands is a cardinal one. It touches to the quick the dignity of a court of conscience itself. Hence, its application does not depend upon the averments of the pleadings, or the wish of counsel, but it may be invoked and applied, *ex mero motu*, by the court.'' [Jones v. Jefferson, 334 Mo. 606, 66 S. W. (2d) 555, and authorities cited; see also Smith v. Holdoway Const. Co., 344 Mo. 862, 129 S. W. (2d) 894, where we discussed exceptions to this rule; see also 24 Am. Jur. 267, secs. 118-123; 27 C. J. 647,

secs. 415-439.] We, therefore, hold that plaintiff, because of knowingly and intentionally participating in these fraudulent conveyances, was properly denied the relief of cancellation and title adjudication.

However, the situation of the Kurths is the same as to the affirmative relief asked by them. They also knowingly and intentionally participated in the fraudulent conveyances. The policy of equity, under such circumstances, is to refuse affirmative relief to either of the fraudulent participants. [24 Am. Jur. 267; 27 C. J. 659, secs. 431-433.] Furthermore, we do not know from the evidence what may have been the true state of affairs of the Leeper Brothers' partnership as between the partners. This might be important in determining the equities of the situation. There is no evidence to show full settlement or administration of the partnership. Mrs. William F. Leeper's testimony (and other testimony) indicates that she had claims against it, and is the real party in interest although not made a defendant. We, therefore, hold that defendants should be denied any title adjudication.

The judgment is affirmed as to the adjudication of Count Three for damages and conversion of crops; and as to all other counts the judgment is reversed and remanded with directions to enter judgment dismissing plaintiff's petition and also dismissing defendants' cross bill and counter action. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.