FRANK DeMAYO, Respondent, v. LEONARD A. LYONS and ANNA B. LYONS, Appellants.—No. 40751.—216 S. W. (2d) 436.

Division One, December 13, 1948.

Rehearing Denied, January 7, 1949.

*Lillie. Knight* and *Walter A. Raymond* for appellants.

648

*Walter W. Calvin* for respondent.

■ [436] BRADLEY, C.—Respondent has filed a motion to dismiss the appeal in this cause, which motion was taken with the case. The ground of the motion is that appellants' statement does not comply with Rule 1.08 as to a fair and concise statement of the facts without argument, etc. The statement would not be commended as a model; few would so grade. Dismissal of an appeal is a drastic penalty and such penalty will not be applied unless fully warranted by the violations [437] complained of. See Neal v. Kansas City Public Service Co., 353 Mo. 779, 184 S. W. (2d) 441. We do not think that the appeal should be dismissed, hence the motion to dismiss is overruled.

Hereinafter the term appellant has reference to defendant Leonard A. Lyons unless otherwise noted. The cause is for an accounting; was referred; the trial court approved the report of the referee; rendered a general judgment in favor of plaintiff (respondent) and against appellant in the sum of $22,004.09. The judgment was made an equitable lien upon certain whiskey and the warehouse receipts therefor. Motion for a new trial was overruled and this appeal followed.

On or about January 29, 1944, the Bismarck Grill, Inc. was operating a retail liquor store and restaurant at the northeast corner of 9th

and Walnut, Kansas City. The capital stock was $2,000.00, and there were 100 shares of $20.00 each. Appellant owned 98 shares, his wife, defendant Anna B. Lyons, one share, and his sister one share. Appellant was manager. At that time the American Distilling Company, Peoria, Illinois, was selling some of its stock to licensed liquor dealers at $105.00 per share. Those who bought this stock could buy from the distilling company, on each share, 16 cases of special privilege brand whiskey at $28.00 per case, and 2 cases of prerogative brand at $42.00 per case. Respondent and appellant agreed to purchase, in the name of the Bismarck Grill, 90 shares of the distilling company stock and did so. And they agreed that there would be purchased from the distilling company, in the name of the Bismarck Grill, as much liquor as could be purchased on the 90 shares. The Bismarck Grill was to sell the liquor and the profits were to be divided equally between respondent and appellant. Respondent, for his payment on half of the stock purchase, gave his check, on January 29, 1944, to appellant for $5580.00. This was $855.00 in excess of one half of the cost of the stock. All told, before the cause was filed, respondent turned over to appellant checks in connection with their liquor enterprise totaling $16,101.33. On the 90 shares of stock there were purchased from the distilling company, 1440 cases of the special privilege brand at $28.00 per case and 180 cases of prerogative at $42.00 per case.

The Bismarck Grill, in making the various purchases in its name from the distilling company, was financed through the Commerce Trust Company, Kansas City. From February 2, to September 9, 1944, the Grill executed 4 demand notes to the trust company aggregating $37,201.30. Defendant Anna B. Lyons, as president of the Bismarck Grill, signed these notes for the Grill. November 17, 1944, a note to the trust company for $23,814.58 was signed only by Anna B. Lyons, personally. The last mentioned note was in part a renewal note of unpaid balances on prior notes. These notes were secured by a deed of trust given by defendants on some real property and by the assignment to the trust company of the warehouse receipts issued on the whiskey as the different purchases were placed in the warehouse. The trust company was made a party defendant, but at the hearing before the referee, it appeared that the trust company had been paid in full. After the trust company was paid in full there still remained in the warehouse, and undisposed of, 698 cases of the special privilege brand and 155 cases of prerogative. The trust company was enjoined from transferring, pending this cause, the warehouse receipts which it had held as collateral.

The Bismarck Grill, for some reason, lost its license to sell liquor; its fixtures, etc. were sold. Thereafter appellant carried on in the name of his wife. Respondent was receiving no returns on his money

outlay and frequently asked appellant about a settlement. Appellant always said that he would get to it, but never did. Finally, according to respondent, in July or August 1945, appellant told him that he (respondent) "didn't own any of the whiskey purchased from the distilling company", and that "he wasn't going to give me nothing." Appellant claimed that there was to be no settlement until all of the liquor, 1620 cases, was sold, and since all had not been sold, no settlement was due. Also, appellant claimed and so testified that respondent [438] demanded and that he, appellant, acting for the Bismarck Grill, turned over to respondent 142 cases of the liquor purchased from the distilling company. This was denied by respondent.

It was found by the referee that appellant received $60.00 per case for 742 cases of the privilege brand, and $70.00 per case for 25 cases of the prerogative, a total of $46,270.00 and the referee found that respondent did not receive any of the liquor that had been disposed of or any of the proceeds derived from the sale of said liquor. The referee further found that appellant had paid the trust company in full for the money borrowed and that after doing so he had remaining from the proceeds of the liquor sales, the sum of $11,805.52, and that respondent was entitled to one half, $5,902.76, of said remaining amount. The $5,902.76, plus the $16,101.33 advanced to appellant by respondent, go to make the $22,004.09, the amount of the judgment rendered by the court.

We have dealt sufficiently with the facts to give a fair picture of the background which gave rise to this cause. The principal ground assigned to overturn the judgment rendered is that the whole arrangement between respondent and appellant was illegal and void ab initio and that such being so, respondent cannot prevail. In the brief appellant says that "the alleged partnership between plaintiff and Leonard A. Lyons for the purchase and sale of whiskey was illegal, void and in violation of the criminal laws of the United States and this state for the reason plaintiff did not have a license to deal in intoxicating liquors and was not qualified to obtain such a license by reason of being an unnaturalized alien, and by reason of having been convicted of a felony."

The record shows that respondent is an unnaturalized alien and that he was convicted in the federal court during national prohibition of two felony violations of the national prohibition act, one in Missouri and one in Kansas, and that he served time for such violations in the federal prison at Leavenworth. Also, it appears that appellant had a brush in Kansas with the national prohibition law, and that he served time in Ohio for manslaughter. It will be conceded that respondent could not qualify for liquor license. See Sec. 4906 R. S. 1939, Mo. RSA Sec. 4906; Wilson v. Burke, 356 Mo. 613, 202 S. W. (2d) 876,

652

Here is the picture: Respondent had no liquor license and could not qualify for a liquor license, yet he acquired, for the purpose of sale by the Grill, a half interest in 1620 cases of whiskey which cost $47,880.00 wholesale. The Bismarck Grill, a corporation, owned and managed by appellant, and licensed to sell intoxicating liquor, was to sell this whiskey and the profits were to be divided equally between respondent and appellant. In the course of carrying out this arrangement respondent advanced to appellant $16,101.33. Appellant, according to respondent's case, breached his part of the agreement to account to respondent for half of the profits realized from the sale of the liquor. In the face of this background the judgment rendered makes respondent whole, except interest on his money outlay and gives him in addition thereto half of the profits realized on the whiskey sold.

To support the contention that respondent is in no position to maintain this cause appellants cite: Leeper v. Kurth et al., 349 Mo. 938, 163 S. W. (2d) 1031; Moore et al. v. Carter et al., 356 Mo. 351, 201 S. W. (2d) 923; Rainer v. Western Union Telegraph Co. (Mo. App.), 91 S. W. (2d) 202; Finley v. Williamson, 202 Mo. App. 276, 215 S. W. 743; Jackson v. City of Columbia et al. (Mo. App.), 217 S. W. 869; State v. Parker Distilling Co., 236 Mo. 219, 139 S. W. 453.

The Leeper case was to cancel a deed made in fraud of creditors; relief was denied. In the Moore case a defendant in a cross action sought to quiet title to land in herself. She had placed the legal title in her husband to protect the land from her creditors. Her request for relief was denied. In the Rainer case damages resulting from delay in delivery of a telegram was denied because the plaintiff had no statutory permit (license) to operate the truck in which milk was transported and damaged because of the delay in delivering the telegram. The Finley case was in replevin to recover household goods. Relief was denied because the household [439] goods were sold to be used in a bawdy house and the plaintiff vender so knew. The Jackson case was in replevin to recover liquor taken from plaintiff's possession by the city marshal. Relief was denied because the plaintiff had the liquor for the purpose of selling it in violation of the law. The governing principle in all these cases is that neither law nor equity can be invoked to redress a wrong that has resulted from the injured party's own wrongful and illegal conduct. "The principle is well settled that 'no court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.' This is a principle founded upon public policy 'not for the sake of the defendant, but for the law's sake, and that only.'" McDearmott v. Sedgwick et al., 140 Mo. 172, l. c. 181, 39 S. W. 776.

The general rule is that money paid out on illegal contracts may be recovered back in an action for money had and received while the

contracts remain executory because a violation of the law is thus avoided by the abandonment of the illegal contract. The law allows for repentance, but if the illegal contract is executed such money cannot be recovered back. The law in such case will leave the parties where they have placed themselves. Idel v. Hamilton-Brown Shoe Co. et al., 343 Mo. 373, 121 S. W. (2d) 817, 1. c. 821, and cases there cited; 17 CJS, Contracts, Sec. 277, p. 664. In the present case there remained unsold a considerable amount of the whiskey purchased from the distilling company, but that fact could not operate to make the unlawful agreement between respondent and appellant executory. It is a felony to sell intoxicating liquor without a license [Sec. 4900 R. S. 1939, Mo. RSA, Sec. 4900(g)], and neither respondent nor appellant had a license to sell intoxicating liquor. While the liquor was sold by the Bismarck Grill, yet under the agreement respondent and appellant were to personally get all the profit, and in such situation the Bismarck Grill was no more than the agent of respondent and appellant. Respondent and appellant were for all practical purposes (profits) selling intoxicating liquors without a license. In other words they were in the liquor business. "The liquor business in this state has been outlawed by legislation and it can only be conducted lawfully by securing a license from the state authorizing it to be done." State v. Parker Distilling Co., 236 Mo. 219, 1. c. 272, 139 S. W. 453, 1. c. 467.

Respondent contends that the facts do not reflect such an illegal taint as to bar recovery. As supporting such contention the following cases are cited: Van Tine v. Hilands (N. Y.), 131 Fed. 124; Corporaton Trust Co. v. Logan et. al. (Del.), 52 Fed. Supp. 999; Gasoline Products Co. v. Champlin Refining Co. (Me.), 46 Fed. (2d) 511; People ex rel. Nelson v. Homewood State Bank, 294 Ill. App. 52, 13 N. E. 285; Maxwell v. Maxwell, 1 La. App. 413; Carlisle et al. v. National Development Co. et al., 108 Okla. 18, 234 Pac. 629; Wagner v. Worrell et al., 76 Calif. App. (2d) 172, 172 Pac. (2d) 751; Wann v. Kelly (Minn.), 5 Fed. 584.

The facts in none of the cases cited are similar to the present facts, unless it be the Wann case to which we again refer, infra. The Van Tine case was for an accounting of the profits in a joint venture in the purchase and sale of stock. It was held that the fact that the defendant illegally received certain commissions in obtaining the stock was no defense to the plaintiff's suit for an accounting. The Corporation Trust Company case also involved transactions in connection with the purchase of stock and especially whether the transactions involved were exempt under the federal securities act. 15 USCA, Sec. 77a et seq. There is nothing in that case pertinent here. The Gasoline Products Company case was to recover for royalties. It was held that the agreement involved was not inherently illegal. It

is stated in that case that courts will not permit a party to retain the benefits of a contract and at the same time avoid its burdens unless public interests clearly require the contrary. That of course is the general rule, but as we have pointed out, supra, the present setup is, in effect, denounced by our statute as a felony.

The Wann case, supra, was to recover plaintiff's portion of profits resulting [440] from a stock deal agreement. It was claimed by the defense that the deal was illegal, a mere gambling transaction, and that for that reason plaintiff could not recover. But recovery was permitted. The court said: "It is urged by Kelly (defendant) that the business in which the parties engaged was contrary to public policy and illegal, and therefore he can retain all the profit which resulted therefrom without recognizing his associates jointly interested, and that a court will not enforce the plaintiff's claim. Such is not the law. The agreement between the parties related to a single transaction, and when the business closed, and Kelly received the profits, he was in duty bound to pay over to the plaintiff his part of it. If the speculation was contrary to public policy and illegal, it had been closed, wound up, and the illegal object of it had been accomplished."

It is stated in 17 CJS, Contracts, Sec. 277, cited supra, that "the rule supported by the weight of authority is that the courts will not aid in the division of profits of an illegal transaction between associates." But there is a minority rule which the Wann case seems to follow. In 17 CJS, Contracts, Sec. 280, it is stated that "while there are cases to the effect that, as long as a party retains the benefit of an agreement he will not be allowed to avail himself of its illegality, they are contra to the weight of authority and are opposed to the general rule." It would appear from the Missouri cases reviewed, supra, that we follow the general rule. Able counsel for respondent in the present case cites no Missouri case which follows the minority rule and we have not found such case.

In such situations as respondent's case reflects, it seems harsh to deny relief, but on the other hand equity will not afford redress to those whose hands are unclean and the law will leave transgressors, in such circumstances, where they place themselves.

The judgment should be reversed and it is so ordered. Dalton and Van Osdol, CC., concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.